GREIG & MATTHEWS v. SMITH.

1. A married woman gave her bond to secure advances to be made to her, authorizing her husband to use the said advances in his own name and business as her true and lawful attorney; and to secure the payment of this bond she executed a mortgage of a lot of land, her separate estate, reciting: "This mortgage is given for the purpose of securing advances to me through my husband, W. G. Smith, and in his own name." The account on the books of the mortgagees was in the name of the husband as attorney for his wife, and the advances were forwarded by express to the same address. The money was used by the husband in paying his own debts, but the mortgagees had no notice of such a purpose on his part. *Held*, that the mortgage was a valid encumbrance on the separate estate of the wife embraced therein. MR. CHIEF JUSTICE SIMPSON, *dissenting*.

2. The husband having received advances over and above the amount advanced under the mortgage, and having shipped cotton to the creditors without any direction as to its application, the creditors could properly apply it to the unsecured amount.

3. Under contract made by the husband to pay a fixed sum as liquidated damages for every bale of cotton not shipped as per agreement made by him, the wife or her estate were not liable.

Before FRASER, J., Anderson, March, 1887.

The master's report was as follows:

All the issues of law and fact in this case having been referred to me to hear and determine, I beg leave to submit the following as my conclusions of law and fact:

The plaintiffs by this action seek to foreclose a mortgage executed by Savannah M. Smith on February 18, 1885, the consideration of which is set out on the face of the mortgage and the bond secured by said mortgage as being one thousand dollars, to be paid on or before November 15, 1885, with interest from date at the rate of ten per cent. per annum until paid; it is also a consideration of the bond and mortgage of the said Savannah M. Smith that W. G. Smith is empowered and authorized to use the said advances in his own name and business as the true and lawful attorney of the said Savannah M. Smith. This mortgage covers the house and lot situated in the village of Honea Path, Anderson County, S. C.

The defendant, Savannah M. Smith, in her answer admits the execution of the bond and mortgage as set forth in the complaint, but claims that she has paid plaintiffs an amount more than sufficient to extinguish the same, and denies that she is indebted to plaintiffs in any amount whatever. She also alleges that the bond and mortgage were given without consideration moving to her separate estate, and denies that said advances were for the benefit of her separate estate. She denies that her husband was her agent. She denies her personal liability on said bond and mortgage.

From the evidence adduced on the trial before me, and the testimony taken in the case, I find the following facts: That Savannah M. Smith on February 18, 1885, executed her bond to the plaintiffs in the sum of one thousand dollars, to be paid on or by November 15, 1885, with interest from the date thereof, and that in said bond she expressly authorized and empowered W. G. Smith (her husband) to use the said advances in his name and business as her true and lawful attorney; that at the same time the said Savannah M. Smith, to secure the payment of said bond, executed her mortgage covering the premises described in the complaint, to wit: house and lot in Honea Path, which was her separate estate, and therein is recited: "This mortgage is given for the purpose of securing advances to me through my husband, W. G. Smith, and in his own name."

That from February 18 to July 15, 1885, plaintiff did advance and pay to W. G. Smith, as agent or attorney for his wife, Savannah M. Smith, the sum of one thousand and thirty-seven dollars and forty-nine cents, including an item of interest of thirty-six dollars and thirty-seven cents. The moneys so advanced, as shown by the evidence, were applied by W. G. Smith to the payment of his own indebtedness. That prior to the execution of the bond and mortgage, to wit, on February 4, 1885, W. G. Smith, in consideration of one thousand dollars, to be advanced him by Greig & Matthews as he might need it during the season, covenanted with them to give them a mortgage on a lot and dwelling at Honea Path, which is owned by his wife, and for said advances he agreed to ship them on consignment for sale for his account one hundred bales of cotton, and in case he failed to ship that

amount, to pay a commission of one dollar and twenty-five cents for every bale so short, which amount the said Greig & Matthews were authorized to charge up against him on his account, as a good and valid charge for value received by him, interest to be paid on the amount so advanced at the rate of ten per cent. per annum.[1]

That from September 15 to December 10, 1885, plaintiffs advanced from time to time the sum of one thousand and twenty dollars and sixty-four cents, including interest to the amount of forty-one dollars and thirty-two cents; these sums plaintiffs claim were advanced to W. G. Smith as agent of his wife, Savannah M. Smith, and as substantiating this claim they produce express receipts showing at one time five hundred dollars was shipped by express to W. G. Smith, and at another three hundred dollars was so sent. W. G. Smith, however, denies agency in the transaction relating to the cotton shipments, claiming that he acted on his own responsibility, and not as agent. For the purpose of this action I do not think it matters whether he acted in his own behalf or as agent for his wife. During this period, that is, from September 23 to December 10, 1885, he shipped to Greig & Matthews, on account, thirty-one bales of cotton, which were sold for two hundred and twenty-five dollars and fifty-seven cents, and applied on his own account.

That Greig & Matthews have charged in their account eighty-six dollars and twenty-five cents commissions or shortage on

---

[1] This agreement was as follows:

CHARLESTON, S. C., February 4th, 1885.

Know all men by these presents: That I, W. G. Smith, of Honea Path, of Anderson County. in the said State, in consideration of one thousand dollars in money, to be advanced me, as I may need it during the season, by Greig & Matthews, I do hereby agree to give them a mortgage on a lot and dwelling at Honea Path, which is owned by my wife, and for said advances I agree to ship them for the present year on consignment for sale for my account one hundred bales of cotton; and in case I fail to ship them that amount, to pay a commission of one 25–100 dollars for every bale so short, which amount they are authorized to charge up against me, as a good and valid charge, for value received by me. Interest at the rate of ten per cent. per annum.

Witness my hand this fourth day of February, 1885.

W. G. SMITH. [L.S.]

shipment of sixty-nine bales of cotton, and interest on all together eighty-four dollars and forty-six cents, and their account, which is verified, shows a balance due thereon of nine hundred and twenty-five dollars and ninety-eight cents.

From the foregoing findings of fact I draw the following conclusions of law: that by virtue of the power vested in married women by section 2036, Revised Statutes, "to bequeath, devise, or convey separate property, in the same manner and to the same extent as if she were unmarried, &c., and all deeds, mortgages, and legal instruments of whatever kind shall be executed by her in the same manner, and have the same legal force and effect, as if she were unmarried," the defendant, Savannah M. Smith, had the power to execute the mortgage in this case, and having executed, with the same legal force and effect as if unmarried, she is thereby estopped, as if unmarried, as to raising the question of consideration where there is no fraud, duress, · or coercion. I do not understand the Supreme Court, in the case of *Habenicht* v. *Rawls & Wilhalf* (24 S. C., 461), as construing this section of the statute, and as there seems to be no analogy between the classes of contracts referred to in section 2036 and those referred to in section 2037, as construed by the court, hence that decision does not apply to the case now being considered.

I hold that the mortgage was given to secure her own debt, so expressed in the bond and mortgage. While a mortgage, as I understand the law in this State, is not a conveyance in the technical sense of that term, yet a mortgage has always been held by our court in the favored light of a *bona fide* purchaser for valuable consideration. The defendant's mortgage not only has all the features usual to mortgages, describing with particularity her separate estate, acknowledging a bargain, sale, and release, on consideration that the money was not paid as therein agreed, with the usual covenants of warranty, properly executed and attested, but it goes further and expressly authorizes her husband to receive and use the money advanced for her and in her name.

I hold as a matter of law, that a married woman under the express provision of section 2036 of the Revised Statutes, is absolutely free to dispose of her property at her own will and pleasure, either by deed or mortgage; indeed, such a conveyance is a

contract as to her separate estate; she can select the object of her bounty in making the conveyance. As to the commissions or shortage on cotton, W. G. Smith agreed in writing to pay it, and the same was paid from proceeds of sale of cotton shipped to plaintiffs; whilst it might have been a hard bargain, he was *sui juris* at the time the contract was made, and cannot now repudiate it.

It is therefore adjudged and decreed, that the conditions of the mortgage having been broken, the plaintiffs are entitled to a foreclosure of their mortgage for the payment of their debt secured thereby, which, on the 5th of January, 1886, amounted to nine hundred and twenty-five dollars and ninety-eight cents, increased with interest from that date to February 11, 1887, date of this decree, seventy-one dollars and twenty-nine cents, making now due plaintiffs on this date nine hundred and ninety-seven dollars and twenty-seven cents. It is further adjudged, that out of the proceeds of sale of the mortgaged premises, the costs of this proceeding be first paid, and the residue be paid to plaintiffs or their attorneys upon their mortgage debt, or so much as may be necessary for that purpose, and the remainder, if any, paid to defendant, Savannah M. Smith.

Upon exceptions to this report the Circuit Judge heard the case and filed his decree as follows :

This case was heard by me at the term of court held in March, 1887, on the report of the master on all the issues and exceptions thereto by the defendants. This action has been brought to foreclose a mortgage executed by the defendant, a married woman, on a lot or parcel of land in the town of Honea Path, her own separate estate, to secure a bond in the penal sum of $2,000, with a condition to pay $1,000 with interest. It is also a condition of this bond that W. G. Smith (the husband of the defendant) is empowered and authorized to use the said advances in his own name and business as my true and lawful representative. The bond and mortgage bear the date, February 18, 1885, and the mortgage states in it that "this mortgage is given for the purpose of securing advances to me through my husband, W. G. Smith, in his own name." The account in evidence in this case

shows that plaintiffs made advances to W. G. Smith, attorney
for Mrs. S. M. Smith, commencing on the day of the bond and
mortgage.   The master has found the amount due after deduct-
ing the payments, or credits, more properly, from the total
amount of advances, interest, commissions, and shortage on cot-
ton not shipped according to agreement with the husband, to be
$997.27 at the date of his report, and that this balance is covered
by the mortgage.

This seems to be a stronger case than that of *Williams & Co.*
v. *Vance & Moseley*, 9 S. C., 373–4, for setting up the pay-
ments or credits on account against the current advances, and
leaving the balance as the amount secured by the mortgage.   It
seems to be clearly so intended by the parties in this case, as the
mortgage was given to secure advances.   I see no good reason
why the amount of shortage for which the husband became liable
in his business should stand on any other footing than the other
items in the account.   I have had occasion to consider several
cases in which married women have claimed to be exempt from
liability on solemn deeds executed by them, and I have no dis-
position here to state fully my views on the subject.

It is sufficient here to say that under our statute a married
woman has a right to execute a *"mortgage of her separate estate*
to have the same legal force and effect as if she were unmarried."
If, as the master holds, a mortgage is a contract, then this mort-
gage is a contract "in reference to her separate estate."   It is a
mistake to say that the mortgage is without consideration as to
her, even if the mortgage is not itself what is meant by a con-
tract in this connection.   The consideration of a mortgage need
not be a contract at all.   Anything which is a benefit to one
party and an injury to the other, is a sufficient consideration, and
even "love and affection" may be sufficient consideration for any
deed under seal.   If, therefore, the defendant conveyed this lot
of land by way of mortgage, the condition being the payment of
the amount due to plaintiffs, I see no reason why she had not the
right to do so.   Under the act a married woman can mortgage in
the same way that she can alien under the constitution.   I infer
from the case of *Habenicht* v. *Rawls & Wilhalf*, 24 S. C.,
461, that a married woman can bind herself personally and make

herself liable to a general judgment, personally, as if unmarried, when the contract was made "in reference to her separate estate;" but this does not interfere with her right to make specific dedication of her own property "by deeds, mortgages, and legal instruments of whatever kind, in the same manner and with the same legal force and effect as if she was unmarried," as I understand it, the same with regard to consideration and everything else. I therefore concur with the master in his conclusions of law and fact, and it is ordered and adjudged, that the exceptions be overruled and the report be confirmed.

From this decree defendant appealed upon the grounds stated in the opinion.

*Mr. J. C. C. Featherston,* for appellant.

*Messrs. D. L. Mabry, B. H. Rutledge,* and *T. M. Mordecai,* contra.

October 12, 1888. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. This was an action to foreclose a mortgage. It seems that the defendant, Savannah M. Smith, is a married woman, the wife of W. G. Smith, and being desirous of raising $1,000, she executed a bond and mortgage of a house and lot, her separate property, to the plaintiffs. The money was to be advanced to her as she might need it. The issues of law and fact were referred to the master, W. W. Humphreys, Esq., who, among other things, found the following facts: "That on February 18, 1885, Savannah M. Smith executed her bond to the plaintiffs in the sum of one thousand dollars, to be paid on or before November 15, 1885, with interest from the date thereof, and that in said bond she expressly authorized and empowered W. G. Smith (her husband) to use the said advances in his name and business as the true and lawful attorney of the said Savannah M. Smith; that at the same time the said Savannah M. Smith, to secure the payment of said bond, executed her mortgage covering the premises described in the complaint, to wit, house and lot in Honea Path, which was her separate estate, and

therein is recited, 'This mortgage is given for the purpose of securing advances to me through my husband, W. G. Smith, and in his own name.' That from February 18 to July 15, 1885, plaintiff did advance and pay to W. G. Smith, as agent or attorney for his wife, Savannah M. Smith, the sum of $1,037.49, including an item of interest of $36.37. The moneys so advanced, as shown by the evidence, were applied by W. G. Smith to the payment of his own indebtedness," &c.

It seems that W. G. Smith arranged with the plaintiffs that he would ship them, towards payment of the advances, one hundred bales of cotton, and "in case he failed to ship that amount, to pay a commission of $1.25 for every bale so short, which amount the plaintiffs were authorized to charge against him; that only 31 bales were shipped, and the proceeds of the sale properly credited; but that the commissions of $1.25 per bale on the shortage of 69 bales, amounting to $86.25, were added to the advances, making the debt of the defendant, Savannah M. Smith, amount at the time of the report to $925.98. The master reports "that Greig & Matthews have charged in their account $36.25 commissions or shortage on failure to ship sixty-nine bales of cotton, and interest on all together, $84.46, and their account shows a balance due thereon of $925.98." Upon this state of facts the master reported that at that date, February 11, 1887, the debt of the defendant, including $86.25 commissions or liquidated damages charged for shortage in shipping cotton, was $925.-98; and that to enforce the payment of this sum and interest the plaintiffs were entitled to foreclose their mortgage on the house and lot of the defendant, Savannah M. Smith.

The defendant excepted to this report, and the cause coming on to be heard by Judge Fraser, he concurred with the master in his conclusions both of law and fact, and confirmed the same. From this decree the defendant appeals to this court upon the following exceptions: "I. Because his honor erred in sustaining the master's report as to his findings and conclusions of law. II. Because he erred as a matter of law in holding that defendant was liable on said note and mortgage. III. Because he erred in holding that the credits or payments made by W. G. Smith, agent, did not operate as a legal satisfaction of the bond and

mortgage.   IV. Because his honor erred as a matter of law in finding that the $86.25 commissions on shortage on shipment of 69 bales of cotton, was an advancement to and embraced in the contract of defendant, and in making her liable therefor."

The papers show, the proof confirms, and the master and judge found that not only the contract, but the bond and mortgage also, were made and executed by the defendant, Savannah M. Smith, for and on behalf of herself alone; and that her husband, W. G. Smith, had no connection whatever with the transaction, except as "her true and lawful attorney."   Under these circumstances there can be no doubt that the defendant, Savannah M. Smith, although a married woman, had the same power to contract with reference to her separate estate "as if she were unmarried."   See the recent cases of *Fant* v. *Brown* (*post*, p.     ; 6 S. E. Rep., 937), and *Booker* v. *Wingo* (*ante* 116; 7 S. E. Rep., 49).

The third exception complains that the credits or payments made by the husband, W. G. Smith, were not allowed to operate as a legal satisfaction of the bond and mortgage.   There being no special instructions on the subject, the plaintiffs had the right to apply these credits so as "to leave the balance at the foot of the account to constitute the mortgage debt."   *Williams & Co.* v. *Vance & Moseley*, 9 S. C., 349, and the authorities there cited.

The fourth exception alleges error in the ruling "that the $86.25, commissions or shortage in shipment of sixty-nine bales of cotton was an 'advancement' to, and embraced in, the contract of defendant, and in making her liable therefor."   As we understand it, a married woman is only liable for what is clearly her own debt, contracted freely and voluntarily for purposes of her own, and in reference to her separate estate.   It appears here that the bond states, "W. G. Smith is empowered and authorized to use the said advances in his own name and business as her true and lawful attorney;" and that the mortgage says, "This mortgage is given for the purpose of securing advances to me, through my husband (agent), W. G. Smith, and in his own name."   It thus appears that the wife did not agree to be responsible for anything but "advances;" that the husband's agency

was only as to the "advances," and that the mortgage was only given to secure "the advances" through her husband. It seems to us that the contract of the parties contemplated "advances" in money only; and that what is called commissions or liquidated damages for the non-delivery of the sixty-nine bales of cotton was not an "advance," and should not have been charged against the defendant as a part of the debt covered by the mortgage. It really was nothing more than a debt of her husband.

The judgment of this court is, that the judgment of the Circuit Court, with the modification herein indicated as to the alleged shortage in the delivery of cotton, be affirmed.

MR. JUSTICE McIVER (concurring for the reasons stated in the following separate opinion): While it has been fully and finally settled by the case of *Aultman & Taylor Co.* v. *Rush* (26 S. C., 517) and others of that class, that, since the act of 1882, a married woman has no power to bind either herself or her separate property, in any form, for the payment of the debts of another; yet it is equally well settled that she has full power to make any contract with reference to her separate estate, and may, by mortgage or otherwise, subject such estate to liability for the performance of such contract. This being so, I see no reason why a married woman having separate property may not, with a view to increase such property, engage in business for herself, and contract debts or obtain advances for the purpose of carrying on such business, and pledge her separate property for the payment of the same. If she has the power to carry on such business personally, it is clear that she may also conduct it through an agent: and this, it seems to me, was precisely the nature of the transaction which is here brought in question. It was expressly stipulated, both in the bond and the mortgage, that the advances were to be made *to her* through her husband "as her true and lawful attorney" or agent, and accordingly the accounts on the books of plaintiffs were so kept: the charges were not made against the husband, but against him as attorney for the wife, and the testimony shows that when money was sent by express it was directed "to W. G. Smith, attorney for S. M. Smith, and so receipted for by him," as appears from the express

receipts offered in evidence.  The fact testified to by the husband that the money advanced by the plaintiffs "was principally used in paying off what he was owing at that time," cannot affect the question, unless it had been further shown (as it was not) that the plaintiffs knew of and acquiesced in such improper diversion of the money advanced to the wife.  That may have been a breach of the husband's trust as agent, but until it was shown that the plaintiffs participated therein, it could not affect their rights.

If a married woman, either personally or through an agent, obtains advances under a representation made in the instrument intended to secure such advances, that the same are to be used in carrying on business for herself, whether the same is to be conducted by herself personally, or by an agent, she is estopped from afterwards denying such representation, as it would be a fraud upon the person making the advances; and surely the faithlessness of her agent, in misapplying the money advanced, cannot affect the rights of the person advancing the money, without it is shown that he participated in such misapplication. Where, however, a married woman executes an obligation to pay the debt of another, her intention to bind her separate property, though expressed in the clearest and strongest terms, does not estop her from disputing her legal liability for the payment of such debt, for the simple reason that the law has denied to her *the power* to contract such a debt, and therefore the expression of her intention to do that which she has no power to do, cannot bind her.  But inasmuch as she has been invested *with power* to contract with reference to her separate estate, her representation that a given debt is of that character will estop her from afterwards disputing that fact, unless it be shown that the creditor knew, at the time the debt was contracted, that such representation was not true, for in that case the creditor would not be misled, and there would, therefore, be no ground for the estoppel.

As to the application of the payments, I agree to what is said in the leading opinion.  So also as to the claim for commissions on the cotton not shipped.  That liability arose under a separate and independent contract between the husband, in his individual capacity and not as agent of his wife, and the plaintiffs; and I am unable to discover anything in the case to connect the wife

with that contract. I think, therefore, that the plaintiffs are entitled to judgment of foreclosure for the amount of the account, after deducting the item of $86.25 charged as commissions on cotton not shipped.

MR. CHIEF JUSTICE SIMPSON, *dissenting*. A married woman has the power under the constitution to "bequeath, devise, or alienate her property, real or personal, held by her at the time of her marriage or acquired thereafter, either by gift, grant, inheritance, devise, or otherwise," and which has become her separate estate under said constitution. She has also the power under an act of the general assembly (section 2037, General Statutes) to purchase any species of property in her own name, and to take proper legal conveyances therefor, "and to contract and be contracted with as to her separate property in the same manner as if she were unmarried"—these latter words being the words of the act, at the time of the transaction involved in the case before the court. Her common law disabilities had not been removed, except to the extent above, when the note and mortgage below were executed.

Now, it does not seem to me that the note and mortgage in question was either a "devise, bequest, or alienation of her separate estate" under the constitution ; nor was it a purchase of property by her in the sense of the act authorizing her to purchase any species of property. Nor was it a contract under the act and the decisions of this court with reference to her separate estate. I find it impossible, therefore, to concur in this opinion. The transaction below appears to me to be nothing more than a borrowing, *in substance*, of money by the husband with his wife as security, or rather advances made to the husband for his own benefit, and upon the credit of the wife's separate estate. And the effort here, in truth and in fact, is to make the wife's separate estate liable for the debt of the husband, the very thing which the constitution sternly inhibits.

Judgment modified.