GWYNN v. GWYNN.

1. Where a married woman represents to ̣her creditor, at the time, or before, she contracts the debt, that the contract has reference to her separate estate, and it does not appear that the creditor knew to the contrary, the married woman will afterwards be estopped from denying the truth of such representation of fact; but a mere declaration of an intention on her part to bind her separate estate would not raise an estoppel.

2. Findings of fact by the Circuit Judge from written testimony submitted to him, approved.

3. A note by a married woman contained a declaration, that "this note is made with reference to my separate estate, and is intended to be a charge upon the same." This would seem to be only a declaration that the note was made with a view to bind her separate estate; but if intended to assert that the money then borrowed was for the uses of her separate estate, she was not thereby estopped from showing the contrary, as the lender in this case was not misled by such representation.

4. Where an assignee for creditors, pending this litigation, paid to a claimant money of the married woman, upon the claimant's obligating himself to repay this amount, if it should be adjudged that the maker was not liable on this note—it being now so adjudged, the claimant must make the repayment promised by him.

5. A married woman is not liable on a note signed by her as surety for

her husband, or on a mortgage of her separate estate, given by her to secure the payment of such note.

Mr. Justice McGowan, *dissenting.*

Before KERSHAW, J., Spartanburg, October, 1888.

Under action by Marie L. Gwynn against A. J. Gwynn and C. P. Sanders, assignee, to vacate a deed of assignment made by the plaintiff, a married woman, and the defendant, her husband, to his co-defendant, this court adjudged that the deed must stand, so far as it undertook to appropriate her separate property to the payment of debts for which she was legally bound; and the cause was remanded. *Gwynn* v. *Gwynn,* 27 S. C., 545. Upon its return to the Circuit, several creditors undertook to show that plaintiff was legally bound to pay them. Some of these claims were allowed and some disallowed by the Circuit Judge, but the appeal questioned the Circuit decree only as to the disallowed note and mortgage of the National Bank of Spartanburg, as to which the opinion fully states the case.

*Mr. Jno. W. Carlisle,* for appellant.

*Messrs. Pope & Shand,* contra.

November 11, 1889. The opinion of the court was delivered by

MR. JUSTICE McIVER. After the decision of this court in this case, reported in 27 S. C., at page 525, the creditors of the plaintiff were called in to establish their demands. Amongst the claims presented under that order, was one in favor of the National Bank of Spartanburg, evidenced by a note, of which the following is a copy:

"January 14, 1884. Twelve months after date I promise to pay to the order of A. J. Gwynn thirteen hundred dollars, value received, negotiable and payable at the National Bank of Spartanburg, S. C. If not paid at maturity, interest thereafter at the rate of 7 per cent. per annum. This note is made with reference to my separate estate, and is intended to be a charge upon the same.                                        M. L. GWYNN.

"(Indorsed): A. J. GWYNN."

At the time this note was given, the plaintiff, who was then, and is yet, a married woman, the wife of her co-defendant, A. J. Gwynn, executed a mortgage on lands of her separate estate to secure the payment of said note; but whether this mortgage was given directly to the bank, or to A. J. Gwynn, the payee of the note, and by him transferred to the bank, does not appear, though the probability is, that it was given directly to the bank, and we will assume that such was the fact. The note above copied was discounted by the bank, and the proceeds applied to the payment of two similar notes previously discounted by the bank, one due and the other to become due, and the balance paid over by the bank to A. J. Gwynn. It appeared also that Mr. Sanders, as assignee, had, from the proceeds of the plaintiff's separate estate, made a payment of two hundred dollars on the note in question, taking from the bank what is termed "a refunding receipt," by which we understand the bank obligated itself to refund the money thus paid in case it should be determined the plaintiff was not legally liable on the note.

The testimony was taken by a referee, and appears to be fully set out in the "Case"; and upon that testimony the Circuit Judge held that the plaintiff was not liable on the note, and consequently that the payment of the two hundred dollars must be refunded by the bank, and the credit cancelled. From this judgment the bank appeals upon the following grounds: "1. Because his honor erred in decreeing that the note of the National Bank of Spartanburg, S. C., was not a valid and binding obligation upon Marie L. Gwynn. 2. That his honor erred in not decreeing that Marie L. Gwynn was estopped from denying the terms of the note. 3. That his honor erred in decreeing that the National Bank of Spartanburg, S. C., should pay back to C. P. Sanders, the assignee, the two hundred dollars paid by him to the bank."

The Circuit Judge bases his conclusion upon the ground, that notwithstanding the fact that Mrs. Gwynn was, apparently, the maker of the note, yet, with the full knowledge of the bank, her husband controlled the proceeds, and after the same had been applied to the payment of other similar notes held by the bank, as far as necessary for that purpose, the balance was paid over to the husband without any authority from the wife. He also held

that "the declaration in the note of her purpose to charge her separate estate is not sufficient to bind her. It was no more than a declaration of her intention that her separate estate should be bound; but it could not have that effect unless made with reference to her separate estate, in the sense in which that language has been interpreted by our courts," recognizing, however, the estoppel which might arise from her representing as matter of fact, that the money was borrowed for the uses of her separate estate, provided the bank had not been privy to the purpose of applying the money to her husband's own uses.

While it is quite true, that where a married woman, before or at the time she contracts a debt, represents to the creditors, as matter of fact, that the contract is made with reference to her separate estate, and nothing more appears, she may be estopped from disputing or denying that the fact is as she has represented it to be, yet if it also appears that the creditor was not misled by such representation, because he knew that the fact was not as represented, but that in fact the debt was contracted for the benefit of the husband, then there can be no estoppel, for the very obvious reason, that one of the essential elements of estoppel is wanting. So that the practical questions in this case are: 1st, Whether the plaintiff, before or at the time she signed the note in question, represented to the bank, as matter of fact, that the money proposed to be borrowed was for the use of her separate estate. 2nd. If so, whether the bank was misled by such representation.

There is much force in the view which the Circuit Judge seems to have taken as to the proper construction of the language used in the note, and that it amounted to nothing more than a declaration of intention, on the part of the plaintiff, to bind her separate estate, which would be clearly insufficient to raise an estoppel. The language is: "This note is made with reference to my separate estate, and is intended to be a charge upon the same." This is susceptible of two constructions: 1st. That the debt evidenced by the note was contracted with reference to the separate estate— for the uses of such estate—and is, therefore, intended to bind the same. 2nd. That the note was made with a view to bind the separate estate, and, in that sense, is made with reference to such

estate. There is certainly no such representation here, as there was in *Greig* v. *Smith* (29 S. C., 426), that the money sought to be borrowed was, as a matter of fact, for the use of the married woman herself. If the declaration, that the note was made with reference to the separate estate, was intended to be a representation of fact, that the money borrowed was for the use of the separate estate, then the additional declaration, that the note was intended to bind the separate estate, was wholly unnecessary, as the intention would be immaterial, provided the fact was as represented.

But even assuming that the Circuit Judge erred in construing the terms of the note, and that those terms must be regarded as not merely an expression of an intention to bind the separate estate, but as a representation of fact, which would have that effect, the important inquiry still remains, whether the bank was misled by such representation. This is a question of fact, which has been decided adversely to appellant by the Circuit Judge, and we cannot say that there is error in his conclusion—certainly no such manifest error as would warrant this court, under the well settled rule, in reversing his decision. On the contrary, it seems to us that there is much in the testimony to support his view. The president of the bank himself says, in his testimony, that he did not rely upon the statements contained in the note, and would not have discounted the note without the mortgage, the terms of which are not before us. He, no doubt, in common with many other persons, supposed that while a married woman could not bind herself by a note as surety for another (for, he says, he had been cautioned against taking a married woman as endorser on a note), she could bind herself by a mortgage. This remark of the president of the bank goes to show that the bank regarded Mrs. Gwynn merely as surety for her husband, although she was nominally the maker of the note; and this is confirmed by the subsequent conduct of the bank in dealing with the proceeds of the note, paying over the balance of the proceeds to the husband without any order or request from his wife, although there was not the slightest evidence that he was her agent, or in any way authorized to represent her. This, with other circumstances appearing in the testimony, which need not be adverted to here,

certainly tends strongly to show that the bank regarded A. J. Gwynn, and not his wife, as the real borrower of the money, and that she was merely his surety, and dealt with him, accordingly, as such. If so, then it is clear that the bank was not misled by any representation of fact made in the note, or otherwise, if any such was made. There can be no doubt that the bank was misled as to matter of law, but certainly not by the plaintiff, as there is no pretence that resort was had to her for legal advice; but, as we have seen, unless it was misled by some representation of fact by the plaintiff, the estoppel could not arise.

The third ground of appeal cannot be sustained. The cases of Robinson v. City Council (2 Rich., 317) and Kenneth & Gibson v. So. Ca. Railroad Co. (15 Id., 284), cited to sustain it, are not applicable. Those were cases in which actions, called under the former procedure actions for money had and received to the use of the plaintiff, were brought to recover back money voluntarily paid without protest, objection, or duress of any kind, and rest upon an entirely different principle from that involved in the present inquiry, as may be seen by the elaborate discussion in the case last named. Here, however, when the two hundred dollars was paid, Mr. Sanders took what is termed a refunding receipt from the bank, by which, as we understand, the bank obligated itself to refund the amount paid upon the happening of a certain contingency. It is, therefore, a matter resting upon an express contract; and now, when it has been determined that the contingency provided for has happened, there can be no doubt that the bank is bound to comply with its express promise.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE SIMPSON concurred.

MR. JUSTICE McGOWAN, dissenting. I cannot concur in this opinion. In reference to the note presented by the National Bank of Spartanburg, the Circuit Judge found that "the bank dealt with it as belonging to him (the husband). After paying the debts due to the bank, the balance was paid to him without any authority from the plaintiff. There was surely enough in these circumstances to put the bank on inquiry as to her having

made the note for her own benefit, or as surety for her husband. The declaration in the note of her purpose to charge her separate estate is not sufficient to bind her," &c. I do not think this statement is in exact conformity with the testimony, taken as a whole. The loan was certainly made at the instance of Mrs. Gwynn alone, her husband not being considered in the transaction. She made several visits to the bank, and personally urged the officers to lend her the money. They at last yielded, and the president drew the note, which she signed, with the statement, as a part of it, that "this note is made with reference to my separate property, and is intended to be a charge upon the same." I cannot avoid the conclusion of fact, that the loan was made alone to Mrs. Gwynn, upon the faith of the securities given by her, and for and in behalf of herself alone; that the money became her money, and would most probably have been paid into her own hands, but for the form of the note, which being drawn according to bank usage, made it necessary for the husband, nominal payee, to put his name upon the back before it was delivered to the bank. Most clearly it was not his note, but that of his wife.

If I am not mistaken in this, and I think the whole transaction shows that I am not, then, as to the borrowing, the case only differs from that of *Greig & Matthews* v. *Smith* in the single particular, that in that case the papers themselves directed the party making the loan to pay the money to her husband as "her true and lawful attorney"; while in this, there is no such express direction in the papers themselves, but it was in proof that the husband was the agent of the wife, Mrs. Gwynn herself testifying that "Capt. Gwynn used my money as my agent in making investment and for other purposes; at that time we had only one purse," &c. Besides, in this case there was a statement in the note of Mrs. Gwynn, that "it was made in reference to her separate property." Was that not as strong a declaration, that the money was borrowed for her and her uses, as would have been a direction in the note that the money should be paid to her husband as her agent? It seems to me it was at least as strong, if not stronger. In the case of *Greig* v. *Smith, supra,* it was well said: "But inasmuch as she (a married woman) has been invested with the power to contract with reference to her separate estate,

her representations that a given debt is of that character will estop her from afterwards disputing that fact, unless it be shown that the creditor knew, at the time the debt was contracted, that such representation was not true; for in that case the creditor would not be misled, and there could, therefore, be no ground for the estoppel," &c.

There can be no doubt that, in reference to this debt, such a representation was made in the note, and, therefore, the debtor, Mrs. Gwynn, should have been estopped from disputing that fact, unless the creditor knew at the time that such representation was untrue. The matter was then reduced to a simple question of fact—knowledge or no knowledge. Did the creditor know that the statement in the note was untrue? If he had such knowledge, it would seem rather strange that he required the statement and acted on it. The Circuit Judge does not say in express terms that he had such knowledge, but that the circumstances were enough to put the bank on the inquiry. I rather incline to think that was not sufficient to satisfy the rule; but in order to have the effect of branding as false a positive representation, clear and full proof of actual knowledge was necessary. The officers of the bank knew that the money went into the hands of the husband as the nominal endorser; but did that furnish the knowledge, that the statement of the wife in the note before them was untrue? Can it be fairly said that the two things were so essentially contradictory, that the existence of one necessarily expunged the other—especially when the husband, A. J. Gwynn, was acting as the agent of his wife, in accordance with what is believed to be the general course in such cases? The creditor knew that the loan was made to the wife alone, without the slightest reference to the husband.

As it seems to me, the officers of the bank were misled by the statement of the wife in the note, and that, in fact, they were not undeceived by the manner in which the money was paid out through the husband; and that, as a consequence, the wife should have been estopped from contradicting her own statement in the note, upon the faith of which alone she was enabled to secure the accommodation. As Mr. Cooley, with his usual discrimination, says: "Where a representation is made of facts which are within

the knowledge of the party making it, the knowledge of the receiving party concerning the real facts, which shall prevent his relying on and being misled by it, must be clearly and conclusively established by the evidence. The mere existence of opportunities for examination is not sufficient. * * * A positive representation of fact cannot be obviated by any general statement of the party making it, or by any extrinsic circumstances, which merely admit of, or warrant, an inference contrary to the representation, even though, of themselves, such statements or circumstances might be sufficient to put the other party upon the inquiry. This is simply another application of the principle, that the right of a party receiving a representation to rely upon it, cannot be taken away or interfered with by inference or implication," &c. See 2 *Pom. Eq. Jur.*, sections 895, 896, and authorities in the notes.

I think the judgment should be reversed, and a new trial ordered.

Judgment affirmed.