AMERICAN MORTG. CO. OF SCOTLAND, Limited, v. OWENS et al.

(Circuit Court of Appeals, Fourth Circuit. February 4, 1896.)

No. 122.

1. MARRIED WOMEN—MORTGAGE OF SEPARATE ESTATE—SOUTH CAROLINA STATUTE.

Under the constitution and statutes of South Carolina relating to the property and contracts of married women, a married woman cannot pledge her estate by mortgage, to secure the contract of another, which has no reference to her separate property, even though that other be her husband, and the mortgage purports, in positive terms, to bind her separate estate.

2. SAME.

One O., a resident of South Carolina, called upon D., the agent of a foreign banking corporation, and applied for a loan upon his wife's real estate, situated in South Carolina. D. made out the application, which O. signed with his wife's name, upon D.'s advice that he could do so. O.'s wife, at the time, in fact, knew nothing about it. D. forwarded the application to the banking company, and received from it the mortgage and note, for execution, and a check for the amount of the loan, drawn to O.'s order. He took the papers to O.'s residence, where the note and mortgage, and a receipt for the money, were signed by O.'s wife, at O.'s request, without reading them, or hearing them read or explained. D. then gave O. the check to his order. None of the money was expended for the benefit of the wife's estate. *Held*, that the land of O.'s wife was not bound by such mortgage, though it contained a clause purporting to bind her separate property.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This was a suit by the American Mortgage Company of Scotland, Limited, against Missouri A. Owens and Raymond Owens, for the foreclosure of a mortgage. The circuit court dismissed the bill. 64 Fed. 249. Complainant appeals.

Allen J. Green (John T. Sloan, Jr., on the brief), for appellant.

J. J. Brown, for appellees.

Before FULLER, Circuit Justice, GOFF, Circuit Judge, and HUGHES, District Judge.

GOFF, Circuit Judge. The appellant filed its bill in the circuit court for the district of South Carolina against Missouri A. Owens and Raymond Owens, praying the foreclosure of a mortgage made by said Missouri A. Owens, dated March 12, 1886, to secure the payment of the sum of $2,500, with interest thereon, as shown by her promissory note, payable to the appellant, the allegation of the bill being that the conditions of said note and mortgage had been broken by the failure to pay, when requested, the sum due on said note. The defendant Raymond Owens was made a party, because he was the husband of the maker of said mortgage. The bill charges that the consideration of the note was a loan of $2,500 to the said Missouri A. Owens, at her request, and that it was stipulated, in the contract relating thereto, that it was to be construed under the laws of the state of South Carolina. The answer sets up that defendant Missouri A. Owens is a married woman, and that her husband borrowed the money, for which the note was given, from W. H. Duncan and the Corbin Banking Company of New York, the agents of the complainant below, for his own use and purposes; that she, at her husband's request, executed the note and mortgage; that complainant, through its said agents, knew that her husband would, and did, use the money for the payment of his own debts, and for his individual purposes, and that she was not to receive, and did not receive, one dollar of said loan; that no part of it was expended for her benefit, or for the benefit of her separate estate. The cause was duly matured for hearing, and submitted on bill, answer, exhibits, and testimony, when the court passed a decree dismissing the bill, and from that order the case comes here on appeal. The court below found that the loan was made to the husband for his own purposes, upon the security of his wife's note and mortgage, and that such a contract, as to the wife and her separate estate, was void, under the laws of South Carolina applicable thereto.

The questions raised on this appeal involve the construction of the laws of that state relative to the contracts of married women, as well as the finding of the facts from the testimony, and their proper application to such laws. The constitution of South Carolina (article 14, § 8) provides that:

"The real and personal property of a married woman held at the time of her marriage, or that which she may thereafter acquire, either by gift, grant, inheritance, devise or otherwise, shall not be subject to levy and sale for her husband's debts, but shall be held as her separate property, and may be bequeathed, devised or alienated by her, the same as if she were unmarried."

An act of the general assembly (14 St. at Large, 325), passed in 1870, relative to the rights of married women, under such provision of the constitution, conferred upon them the same power to contract, and be contracted with, as if they were sole. Pelzer v. Campbell, 15 S. C. 581. In December, 1882, the general as-

sembly of South Carolina passed an act, amending the act of 1870, which, as so amended, reads as follows:

"A married woman shall have the right to purchase any species of property in her own name, and to take proper legal conveyance therefor, and to contract and be contracted with as to her separate property in the same manner as if she were unmarried: provided, that the husband shall not be liable for the debts of the wife contracted prior to or after their marriage, except for her necessary support." Gen. St. 1882, § 2037.

It is under this enactment that the contract in question is to be construed. It is certainly true that, under the common law, a married woman could not have made the note and mortgage now in suit. If they can be maintained, it must be by virtue of the constitutional provision and the legislative enactments before mentioned. The supreme court of South Carolina has given us the proper construction and true meaning of said provisions, so that it is now no longer an open question, whatever the diversity of opinion relative thereto may have formerly been. The only contract which a married woman, in South Carolina, is authorized to make must not only relate to her separate estate, but it must be in regard to her individual property. She may, in positive terms, in a writing signed by her, declare that her object is to bind her separate estate, and still she would not be bound by it, unless it was clearly shown that the contract was intended to benefit her separate property, or that it in fact concerned or had reference to such property. Under said legislation, a married woman cannot pledge her estate by mortgage, for the purpose of securing the contract of another, which has no reference to her separate property, even though that other be her husband. In the case of Bates v. Mortgage Co., 37 S. C. 88, 16 S. E. 883, the following language was used in the decree, which was affirmed by said court, in construing the legislation referred to:

"We think it is now the settled law of this state that it is necessary, in an action to enforce a contract executed by a married woman, to show that such contract was made with reference to her separate estate; that the burden of proof is upon the party seeking to enforce such contract; and that, while a married woman may borrow money for her own use, either directly, or by her husband, as her authorized agent, and secure the same by a valid mortgage of her separate estate, yet she cannot do this for the benefit of her husband, provided the lender has knowledge of such intended use when he makes the loan."

In the case of Salinas v. Turner, 33 S. C. 231, 11 S. E. 702, Chief Justice Simpson, delivering the opinion of the court, said:

"Now, it has been held by this court, in several cases recently decided, that, while a married woman may borrow money for her own use, etc., and secure the same by a valid mortgage, yet that she cannot do this for the benefit of her husband, provided the lender has knowledge of such intended use. This has been so recently and so plainly decided that we do not deem it necessary here to examine into the reason and foundation of the proposition. We think it sufficient simply to refer to the cases, to wit: Tribble v. Poor (S. C.) 8 S. E. 541; Gwynn v. Gwynn (S. C.) 10 S. E. 221; Greig v. Smith, 29 S. C. 426, 7 S. E. 610. If these cases have not established this proposition beyond controversy or doubt, then we do not know how a legal proposition could be established; certainly not by the decisions of a court of last resort."

In the case of Greig v. Smith, supra, Judge McIver, in his opinion, says:

"If a married woman, either personally or through an agent, obtain advances, under a representation made in the instrument intended to secure such advances, that the same are to be used in carrying on business for herself, whether the same is to be conducted by herself personally or by an agent, she is estopped from afterwards denying such representation, as it would be a fraud upon the person making the advances; and, surely, the faithlessness of her agent, in misapplying the money advanced, cannot affect the rights of the person advancing the money, without it is shown that he participated in such misapplication. Where, however, a married woman executes an obligation to pay the debt of another, her intention to bind her separate property, though expressed in the clearest and strongest terms, does not estop her from disputing her legal liability for the payment of such debt, for the simple reason that the law has denied to her the power to contract such a debt, and therefore the expression of her intention to do that which she has no power to do cannot bind her. But, inasmuch as she has been invested with power to contract with reference to her separate estate, her representation that a given debt is of that character will estop her from afterwards disputing that fact, unless it be shown that the creditor knew, at the time the debt was contracted, that such representation was not true; for, in that case, the creditor would not be misled, and there would, therefore, be no ground for the estoppel."

So far as the law of this case is concerned, we have no trouble; and a careful study of the evidence forces us to agree with the court below in its findings as to the facts. We are unable to see the facts as the counsel for the appellant presents them. If we did, it would follow that appellant's insistence should be sustained, and the decree complained of be reversed. Briefly stated, the testimony shows as follows:

The American Mortgage Company, a corporation organized under the laws of Great Britain and Ireland, was engaged in business in the United States; its managing agent, J. K. O. Sherwood, residing in the city of New York. In 1883 he, with representatives of the Corbin Banking Company of New York, went to Columbia, S. C., for the purpose of investigating the financial situation, and determining as to the propriety of establishing their business in that state. While so there they met and advised with one W. H. Duncan, of Barnwell, S. C. Soon after this visit the American Mortgage Company commenced to make loans in that section of the state on the security of real estate. The Corbin Banking Company was organized in 1874, its purpose being to carry on a general banking business, and to negotiate loans on the security of improved farms. It commenced its negotiations in South Carolina very soon after said conference with W. H. Duncan, furnishing him with all the necessary blanks to be used by applicants for loans, and which, when properly filled up, gave to the lender information as to the character of the applicant and the sufficiency of the security offered. A party desiring to negotiate a loan would apply to Duncan, who would see that the questions asked in the application were answered and the blanks all properly filled, after which the paper would be sent to the Corbin Banking Company, in New York. If that company was satisfied, the application was accepted, and the notes, with the mortgage, for the borrower to sign, were prepared under the direction of its officials, and, with the check

of that company for the amount of the loan, less commissions, were sent to Duncan, who had them executed and returned, after which they were delivered to the American Mortgage Company, which paid to said Corbin Banking Company the full amount called for by the notes. Duncan advertised, in the papers published where he lived, that he had large sums of money to loan. He procured the borrowers, supervised the execution of the papers, made abstracts of the titles, reported as to the value of the property offered as security, and took contracts, from those desiring such loans, by which the borrower generally agreed to allow said Duncan and the Corbin Company 20 per cent. of the sum borrowed as commissions for negotiating the loan. If default was made in the payment of either the interest or the principal when due, the Corbin Company so advised Duncan, and he proceeded to foreclose the mortgage and remit the proceeds to the lender. It was shown that Missouri A. Owens, the defendant, was the owner of the land conveyed by the mortgage, and that her husband, Raymond Owens, was without property himself, but that he lived on the land with his wife and managed the same; that Duncan, who lived near them, advertised that he had money to loan; and that Raymond Owens, without the knowledge of his wife, went to Duncan, and asked him for a loan, offering as security his wife's real estate. Duncan advised him that he could secure the loan, and made out the application for him, when Raymond, with the approval of Duncan, signed his wife's name to it. He did not ask for the loan for his wife, but for himself. The application, so signed by the husband, was not seen by the wife until after this suit was brought. While she was informed, before the mortgage was given, that an application had been made by her husband for a loan on her property, she was not told that it was in her name. She had not authorized the application, nor the signing of her name to it. Duncan sent the application to the Corbin Banking Company. It was stated, in the application, that part of the money was to be used in building a gin house on the land to be conveyed to secure the loan; but none of it was so used, and no part of it went to the wife, nor was it expended for the benefit of her separate estate. The note and mortgage were prepared under the direction of the Corbin Company, in New York, and sent to Duncan, in South Carolina; and he took them to Mrs. Owens, after having arranged for a conference with her, through her husband, who had asked her to sign them. Neither the note nor the mortgage was read or explained to her. She was told where to sign them, and she signed as she was requested to do. The note and the mortgage were then retained by Duncan, who gave to Raymond Owens—he having been present during the execution of the papers—a check, payable to his order, for the amount of the note less commissions and costs; his wife giving her receipt for the same. This is, in substance, all the testimony relating to the procurement of the loan and the execution of the papers connected with it.

We think it is clear that, as to this transaction, Duncan was not the agent of Missouri A. Owens, but was the agent of Raymond Owens. She had not requested the services of Duncan, nor had she

authorized any one to do so for her. He had not talked with her, nor communicated with her on the subject, until he called to see her, in order to close the negotiations he had undertaken for her husband. The claim of the appellant, that, when Mrs. Owens signed the note and executed the mortgage, she ratified the previous acts of her husband relating thereto, and that she was, therefore, estopped from denying them, is, in the light of the evidence, without merit; for the matter was not explained to her, she was not advised that the application for the loan was in her name, nor was she told that it stated that the money was for her use, and that it was to be expended on her property. As the transaction then appeared to her, it was an effort on the part of her husband to borrow money, the payment of which, with the interest that might accrue thereon, she was to secure by her note and a mortgage on her land; and we think Duncan so, in effect, considered it, evidently believing that, under the law then existing, the wife could secure such a debt by a conveyance of her separate estate. That she was willing to do so is shown by what took place at the time when Duncan gave his check for the money due on the loan; but that she had no power so to do, she being a married woman, is also plain, and therefore her willingness, and her intention to so secure the debt of her husband, would not make the act valid and binding upon her. On this point we quote, with approval, the following words from the opinion of the court below, viz.:

"As Mrs. Owens was a married woman, with a limited power to contract, a person dealing with her must take notice of her disability; and, when he seeks to enforce this contract, the burden is upon him to show that it is one a married woman is capable of making. He must show that she had the power to make the contract. To do this, he must show that the money was borrowed for her use. If it were, she would be liable; if not, she would not be liable, even though she expressly declared her intention to bind her separate estate, in the obligation given to secure the repayment of the money borrowed, for the simple reason that, in the latter case, she had no power to make such a contract, and her intention to do that which she had no power to do is wholly insufficient to bind her legally. Savings Inst. v. Luhn, 34 S. C. 186, 13 S. E. 357. Who, then, borrowed this money? The husband acted. Did he act as his wife's agent? Did Duncan deal with him as such, believing, or having reason to believe, that Mrs. Owens was the principal, that she was the borrower, that the money was borrowed for her use, and that her husband was only the agent? Owens told him that he wanted the money, and that he wanted the loan on his wife's estate. He did not say that his wife wanted it; nor did he say that it was for her use, nor that his wife authorized him to borrow it. When Duncan prepared the application, Owens asked him if he could sign it. He did not profess to have authority from his wife to sign it. Apparently the question meant, 'Being her husband, have I a right to sign for my wife?' Duncan seemed to think that he could. Now, the husband is never, qua husband, the agent of the wife. Such agency is never presumed, it must be proved, and must be proved like every other fact. Merely signing his wife's name does not prove that he was the agent, especially when he signed it under the advice of Duncan. The application was a contract, the foundation of the loan. So far there is nothing to show that it was Mrs. Owens' contract. Did she subsequently ratify it or affirm it? Or, if not, is she estopped from denying that it is her contract? In order to prove that she ratified or confirmed the act of her husband, it must be shown that she had full knowledge of the facts concerning it (Drakely v. Gregg, 8 Wall. 267); and in order to estop her it must be shown that she held out her husband to the world as her agent, or that, in this transaction, she

had put him in possession of all the indicia of authority to act for her as her agent."

That Duncan, as to the execution of the note and mortgage, was the agent of the appellant, does not admit of doubt. They were sent to him, in order that he might have them signed and properly authenticated; and, as to them, he represented the American Mortgage Company, to whom the note was payable, in whose name the mortgage was given, and which said company was fully aware that such proceedings would be taken by him, not only in this, but in all other like cases. So far as the appellant is concerned, Duncan's authority may have been confined to the particular matters mentioned, and his agency may have been special as to them; but it follows, nevertheless, that Mrs. Owens was, in effect, dealing with the company, and that it was not only bound by the acts of Duncan, but that his knowledge was its information as to the matters so confided to, and then necessarily considered by, him. That Duncan well knew, at the time the papers were signed, that the husband was in fact the borrower, and that he was endeavoring to secure the loan by the note of his wife and the mortgage of her property, is apparent; and to hold otherwise is to ignore the evidence, and place an estimate on his ability and character not justified by the facts as they appear to us in the record of this cause. We conclude that Mrs. Owens did not bind her separate estate, that the mortgage cannot be enforced, and that the bill was properly dismissed.

It follows that the decree appealed from should be affirmed, and it is so ordered.