BATES v. AMERICAN MORTGAGE COMPANY.

1. FINDINGS OF FACT—AGENCY.—Where a corporation A makes a loan of money through a corporation B, which solicits loans and makes all necessary inquiries, examination of titles, and drafts of papers, through a designated person at the home of the borrower, such person taking a written

application in which he is declared to be the agent of the borrower, this court sustained the finding of the Circuit Judge, that this person was the agent of B, and B the agent of A.

2. FINDINGS OF FACT by the Circuit Judge as to the credibility of a witness, whose testimony had been taken by commission, sustained.

3. SUB-AGENTS—MARRIED WOMEN.—The mortgagor being a married woman, and her husband having informed the local agent that the money about to be borrowed on the security of her separate estate was to be used by him for his own purposes, and was afterwards so used, this knowledge by a sub-agent of the lending corporation, acquired in the course of the very business, is imputable to the principal. And, therefore, the mortgage so given by the married woman is null and void.

Before IZLAR, J., Barnwell, March, 1891.

Action by Savannah E. Bates against the American Mortgage Company of Scotland, Limited. The Circuit decree was as follows :

The plaintiff, a married woman, brings this action to perpetually enjoin the defendants, their agents and servants, from selling the lands of plaintiff, or otherwise interfering therewith, under and by virtue of a certain note and mortgage set forth in the complaint, and the power of sale contained in said mortgage, and for such other and further relief as may be just. The facts alleged, and on which the plaintiff asks this relief, are that she was a married woman at the time of executing said mortgage upon her separate property, and that the same was executed by her as security for a loan effected by her husband, J. B. Bates, through one W. H. Duncan, the agent of the defendant corporation ; that the moneys obtained on said security were received by her husband and applied by him to the payment of his own debts, and not to the uses of the plaintiff, or for the benefit of her separate property, and that the object for which said loan was obtained was well known to the agent at the time the same was negotiated. The main issues raised by the answer of the defendants are as to the agency of the said W. H. Duncan, and the notice to the defendant corporation that the money loaned on said security was to be applied by the husband of the plaintiff to the payment of his own debts,

12—37

and not to the use of the plaintiff, nor to the benefit of her separate property.

The case was heard at the March, 1891, term of the Court of Common Pleas for Barnwell County aforesaid, upon the pleadings and evidence previously taken. The issues raised were argued at length by the counsel of the respective parties. Before entering upon a discussion of the legal questions involved, it becomes necessary to state as concisely as possible our conclusions of fact as found from the testimony. In arriving at these conclusions, we deem it proper to say that we have made a careful study of the testimony in all its bearings, and have given to it such weight as in our judgment it is entitled. We are not favorably impressed with the testimony of Frederick W. Dunton, examined on behalf of the defendants. It does not strike us that this witness was actuated by a desire to "Speak the truth and the whole truth," but rather by a desire to evade and keep back the "whole truth," especially when we take into consideration the fact of his long connection as a partner with the Corbin Banking Company, his opportunities of acquiring a thorough knowledge of its business methods and its business transactions, and his very recent withdrawal from the partnership.

The following facts are, in our opinion, sustained by the weight of the evidence, in the light in which we view it: On the second day of March, 1885, the plaintiff, then a married woman, having a separate property, signed an application for a loan of one thousand dollars, upon her plantation in Barnwell County aforesaid, containing two hundred and thirty acres, giving description and quality of the land, with a plat thereof attached. This application contains the following clause: "I understand that if this application is negotiated by W. H. Duncan, it will be upon the representations herein contained, which are true in all respects, and are made by me to be used by him as my agent in procuring for me the loan." And is signed "S. E. Bates, applicant."

On the 25th day of April, 1885, the plaintiff signed another paper, of which the following is a copy: "Whereas, I have this day employed W. H. Duncan to negotiate for me a loan of $1,-

000 for a term of five years, with interest at the rate of eight per cent. per annum, upon a note and mortgage securing the same, which shall be a first lien upon my farm in Barnwell County, S. C. Now, then, if he shall succeed in negotiating said loan within thirty days upon the usual conditions exacted by the Eastern money lenders as to security, perfecting of title, insurance, &c., I agree to pay the said W. H. Duncan the sum of $200, which shall be in full of his commissions and negotiation. I also agree to furnish an abstract of title to the farm, and to pay the fee for recording my mortgage." And on the first day of May, 1885, the plaintiff signed a receipt, of which the following is a copy: "Received from the Corbin Banking Company one thousand dollars, proceeds of loan negotiated by them for me with the American Mortgage Company of Scotland, (Limited,) less commissions as agreed." The note and mortgage referred to in the complaint were executed by the plaintiff on the 25th day of April, 1885, and the mortgage recorded in the register's office for Barnwell County aforesaid on the fourth day of May, 1885.

The Corbin Banking Company of New York was, at the time of negotiating the loan in this case, doing a general banking business, and engaged in negotiating loans in the Southern States, secured by mortgages of real estate, for various companies and corporations in this country and in Europe; and the said W. H. Duncan held himself out to the public in negotiating loans in this State as the agent of the said Corbin Banking Company, and that the loan negotiated by him in this case was as such agent. The Corbin Banking Company, in effecting said loans, furnished all the necessary blanks for applications, &c., to their local State agents, fixed the terms, examined and approved the securities offered, paid over the moneys loaned for the lenders; took the receipts for same in their own name; shared in the commissions, and looked after the collection of the securities. The moneys loaned in this case were secured by the note of the plaintiff, and a mortgage of her separate real property; and the moneys thus obtained were applied by her husband, J. B. Bates, to the payment of his own debts, and not expended by the plaintiff, or for the benefit of

her separate property; and no part of said money ever came into the hands of the said plaintiff. William H. Duncan was informed by J. B. Bates, the husband of the plaintiff, at the time the application for said loan was made, that the money was wanted to pay his debts, and that his wife would sign the mortgage to secure the loan, in order that he might get the money. In negotiating this loan, the evidence does not satisfy me that J. B. Bates was the authorized agent of his wife, and effected the loan for her.

This action was commenced on the 1st day of August, 1890, and thereafter an order was made by Judge James Aldrich, restraining the defendants from further attempting to sell the property of the plaintiff under the power of sale contained in said mortgage until the cause was heard and determined on its merits.

We think it now the settled law of this State that it is necessary, in an action to enforce a contract executed by a married woman, to show that such contract was made with reference to her separate estate, and that the burden of proof is upon the party seeking to enforce such contract; and that while a married woman may borrow money for her own use, either directly or by her husband as her authorized agent, and secure the same by a valid mortgage of her separate estate, yet she can not do this for the benefit of her husband, provided the lender has knowledge of such intended use when he makes the loan. These propositions have been so recently and plainly decided by our Supreme Court, and are so well known to the profession generally, that it would be a waste of time to review the cases. See *Tribble* v. *Poore*, 30 S. C., 97; *Gwynn* v. *Gwynn*, 31 *Id.*, 482; *Greig* v. *Smith*, 29 *Id.*, 429; *Goodgion* v. *Vaughn*, 32 *Id.*, 499; *Salinas* v. *Turner*, 33 *Id.*, 231. It is enough to say, the cases are recent, and fully sustain the propositions laid down. Applying these principles to the facts as found in this case, there can be but one conclusion, namely: That the note and mortgage executed by the plaintiff herein to the defendant corporation, and now sought to be enforced by said corporation against the plaintiff, are void, and, therefore, not binding upon her, or enforceable against her separate property.

As this case, however, turns mainly upon the question of agency of these middle men of the defendant corporation, and the notice to them of the object for which said loan was obtained, it becomes necessary, perhaps, that we should discuss briefly the facts relating to this question, and the law applicable thereto. The defendant corporation, it is evident, had money to lend, and this money it was willing to entrust to the Corbin Banking Company to lend, if said company was satisfied with the security. The Corbin Banking Company was engaged, as we have seen, in negotiating loans on real estate security in the Southern States, for foreign corporations. The moneys, as well as the securities to be taken therefor, were entrusted to the Corbin Banking Company. The company sought and effected these loans by and through their agents at different points, to whom they furnished printed blanks for making applications for loans. They fixed the terms, examined and approved the securities offered for those who had entrusted them with moneys to lend, and looked after the collection of the securities for those persons for whom they acted and made loans. We find nothing in the testimony to satisfy us that the defendant corporation held control of their money, and decided for themselves when they would part with it, or made the terms and approved the securities offered. On the contrary, all these things appear to have been done by the Corbin Banking Company and their local agents. The moneys of the defendant corporation were committed to the Corbin Banking Company for investment. They made the loan in this case, fixed the terms, and accepted the security for the defendant corporation. If this be so, the relation of principal and agent was clearly established between the Corbin Banking Company and the defendant corporation.

The relation of principal and agent is a question of fact, and may be proved by the acts, declarations, or conduct of the principal and agent; and the plaintiff here was not estopped by the clause contained in the application for the loan, from showing that W. H. Duncan was the agent of the Corbin Banking Company. Agency may be implied when one party accepts the benefits resulting from the transactions of another party, who ostensibly acted as his agent. The acts, declarations, and con-

duct of W. H. Duncan, as also the fact that the benefits derived by the transaction, were accepted and shared in by the Corbin Banking Company, all show conclusively that in negotiating this loan, W. H. Duncan acted as the agent of the Corbin Banking Company, who, as we have already seen, were the agents of the defendant corporation.

We do not think, under the circumstances, the fact that the plaintiff here acknowledged in the written application that said application was to be used by the said W. H. Duncan as her agent in procuring the loan, is at all conclusive of the question as to the agency of W. H. Duncan in negotiating said loan. To our mind this fact rather strengthens the conclusion to which we have arrived. The clause is unusual in transactions of this nature, and is, therefore, to be looked upon with suspicion. The intention seems to have been to estop the plaintiff at the outset from denying or proving that the said W. H. Duncan acted in any other capacity than that of agent for the borrower in negotiating said loan; and thereby enable the lender to escape the express notice that the money was obtained on the security of the wife, for the sole purpose of paying and satisfying the debts of the husband. Such efforts to evade the law are never looked upon by Courts of Equity with favor. These intermediaries, W. H. Duncan and the Corbin Banking Company, were, no doubt, for certain purposes, the agents of both parties, yet, for certain other purposes, they were clearly the agents of the lenders only—such as making the loan, fixing the terms, and accepting the security. And, as was said by Chief Justice Simpson, in the case of *Salinas* v. *Turner, supra:* "To allow this solemn constitutional provision for the protection of married women and their separate estates to be evaded in this roundabout way, would, it seems to us, be a mockery, emasculating said provisions, and rendering the whole law upon the subject utterly useless and worthless."

The only question that remains is, is the knowledge of the agent the knowledge of the principal? We can not better answer this question than by adopting the language of our own court in the case of *Salinas* v. *Turner, supra.* The court says: "Assuredly so as to matters within the scope of his agency.

This is elementary, and certainly does not need the citation of authority to support it." We must, therefore, hold that the defendant corporation, the real lender, knew that this money was borrowed for the express purpose of paying the debts of the plaintiff's husband. These intermediaries, W. H. Duncan and the Corbin Banking Company, being agents of the defendant corporation, the lender, for making the loan, fixing the terms, and accepting the security, their knowledge is the knowledge of their principal. And it goes without contradiction that W. H. Duncan, the agent of the Corbin Banking Company in this State, was expressly informed by the husband of the plaintiff, before the loan was negotiated, that the object of procuring the loan was to enable the husband to pay and satisfy his own debts.

We come next to consider the relief demanded by the plaintiff. The plaintiff asks an injunction against the defendants, perpetually restraining them, their agents and servants, from selling the lands of the plaintiff under the note and mortgage mentioned in the complaint. Among the equities set out in the complaint, and on which the relief by injunction is asked, is that such sale will put a cloud upon the title of the plaintiff to said land. That this is a ground for equitable relief, there can be no question. In *Ketchin* v. *McCarley*, 26 S. C., 7, the court says: "The jurisdiction of a Court of Equity to prevent, as well as to remove, a cloud upon the title to real property, seems to be well settled." Again: "It is difficult to establish any exact test, which will be applicable in all cases to determine what constitutes such a cloud upon the title as to authorize a Court of Equity to interfere for its protection. It has been held, however, that if the sale, which it is sought to restrain, is such that in an action of ejectment brought by the purchaser under the sale, the real owner of the property would be obliged to offer evidence to defeat the recovery, then such a cloud would be raised as to warrant the interference of equity to prevent the sale." The present case seems to us to come clearly within the rule laid down by our Supreme Court. If the defendant corporation is allowed to sell the mortgaged premises under the power of sale contained in the mortgage, the plaintiff could only protect herself in an action of ejectment brought

by the purchaser at such sale, by offering evidence tending to show the invalidity of said mortgage in order to defeat a recovery.

If the only question before the court was whether the plaintiff had made out such a case as would entitle her to an injunction perpetually enjoining the defendant corporation, their agents and servants, from selling the mortgaged premises under the power of sale contained in said mortgage, the answer would certainly be in the affirmative. The answer of the defendants, however, puts in issue the validity of said note and mortgage, and demands a judgment of strict foreclosure and sale of the mortgaged premises. The defendants having failed to show either that the note and mortgage of the plaintiff had reference to her separate property, or that there was a want of notice on the part of the defendant corporation as to the object of the loan, are not entitled to the affirmative relief demanded by their answer. The note and mortgage being invalid for the reasons hereinbefore stated, the plaintiff is entitled to judgment to that effect, and that the same be delivered up cancelled. It is, therefore,

Ordered, adjudged, and decreed, that the note and mortgage executed by the plaintiff to the defendant corporation, and bearing date the 25th day of April, 1885, be, and the same are hereby, set aside as null and void, and that the same be delivered up to the plaintiff cancelled, and that the injunction heretofore granted in this cause be, and the same is hereby, made perpetual.

Finally ordered, that the costs of this action be taxed by the clerk of Barnwell County, and be paid by the defendant corporation.

Defendants appealed on the several grounds set forth in the opinion.

*Messrs. John T. Sloan, jr.,* and *Allen J. Green,* for appellant.

*Messrs. Robert Aldrich* and *W. A. Holman,* contra.

February 13, 1893. The opinion of the court was delivered by

MR. JUSTICE McGOWAN.   The facts of this case are correctly stated in the argument of the appellants, as follows: "The action was commenced August 5, 1890, by the plaintiff, a married woman, against the defendant, a foreign corporation, with its place of business in Scotland, to perpetually enjoin the sale of her lands under power contained in a mortgage executed by her on April 25, 1885, to secure a loan from the defendant of $1,000, upon the ground that the mortgage and note thus executed by her alone were intended merely as security for a debt of her husband, and was, therefore, null and void.   An injunction was granted pending the litigation.   The cause was referred to take the testimony, all of which is printed in the brief; and came on to be heard upon the pleadings and testimony so taken, before his honor, Judge Izlar, at the March term (1891) for Barnwell County, who granted the relief prayed for, and ordered the note and mortgage to be delivered up to be cancelled, as follows: 'Ordered, adjudged, and decreed, that the note and mortgage executed by the plaintiff to the defendant corporation, and bearing date April 25, 1885, be, and the same is hereby, set aside as null and void, and that the same be delivered up to the plaintiff cancelled, and that the injunction heretofore granted be, and the same is hereby, made perpetual,' " &c.

From this decree (which ought to appear in the report of the case) the defendant appeals to this court upon the following exceptions:

I. That his honor erred in holding that the Corbin Banking Company was the agent of the defendant company, in negotiating the loan to the plaintiff.

II. That his honor erred in holding (1) that the Corbin Banking Company, as agent of the defendant company, had under its control the funds of said defendant company; (2) that said Corbin Banking Company furnished blanks to W. H. Duncan for the purpose of receiving applications for loans; (3) that said Corbin Banking Company fixed the terms on which loans were to be made; (4) That said Corbin Banking Company accepted the security offered by plaintiff Bates, and otherwise directed the application of the funds entrusted to it,

13—37

which several findings were not only without evidence to support, but contrary to the testimony adduced at the trial.

III. That his honor erred in holding that W. H. Duncan was the agent of the Corbin Banking Company, notwithstanding the said Duncan was employed and paid by the plaintiff.

IV. That his honor erred in holding that W. H. Duncan advertised himself as the agent of the Corbin Banking Company.

V. That his honor erred in holding that either the Corbin Banking Company or the defendant company should be charged with knowledge of communications made by J. B. Bates, the husband of plaintiff, to W. H. Duncan.

VI. That his honor erred in holding that J. B. Bates, the husband of plaintiff, was not her agent in receiving the money borrowed by plaintiff.

VII. That his honor erred in holding that the money borrowed by the plaintiff was not for her separate estate, use, and benefit.

VIII. That his honor erred in holding that knowledge communicated to W. H. Duncan by J. B. Bates (held not to be the agent of his wife, the plaintiff,) was, nevertheless, to be imputed to the defendant company.

IX. That his honor erred in holding that the note and mortgage of plaintiff are null and void, and not enforceable against her separate estate.

X. That his honor erred in refusing the relief demanded by defendant.

XI. That his honor erred in rejecting the testimony of F. W. Dunton.

The questions involving the rights of married women under the Constitution and laws of this State has been so often and fully considered in our courts, that we do not think it necessary in this case to go into the general subject again.

Exceptions 1, 2, 3, 4, 6, and 7 complain of findings of *fact* by the Circuit Judge, principally upon the subject of the relations between the Corbin Banking Company of New York and the defendant company in Scotland, and of those between W. H. Duncan, of Barnwell, S. C., and the said Corbin Banking Company. Upon the points indicated in the above

exceptions, we have considered the evidence, which is printed in the brief, and has been so fully and clearly stated in his decree by the Circuit Judge, that we think any attempt to restate and review it would add nothing, but possibly confuse it. After careful consideration, we cannot say that the findings of fact by the Circuit Judge are without evidence to sustain them or against the weight of evidence.

Exception 11 complains that the judge "rejected" the uncontradicted testimony of F. W. Dunton, of New York, who was examined by commission. This was a suit in equity, and heard by the judge, sitting as chancellor; and he had the right to judge of the *credibility* of all witnesses examined in the case. In his decree he states as follows: "Before entering upon a discussion of the legal questions involved, it becomes necessary to state as concisely as possible our conclusions of fact as found from the testimony. In arriving at these conclusions, we deem it proper to say that we have made a careful study of the testimony in all of its bearings, and have given to it such weight as in our judgment it is entitled to. We are not favorably impressed with the testimony of Frederick W. Dunton. It does not strike us that this witness was actuated by a desire 'to speak the whole truth,' especially when we take into consideration the fact of his long connection as a partner with the Corbin Banking Company, and his very recent withdrawal from the partnership," &c. We can not say this was error.

That brings us to the remaining exceptions, which, in substance, complain "that his honor erred in holding that either the Corbin Banking Company or the defendant company should be charged with knowledge of communications made by J. B. Bates, the husband of plaintiff, to W. H. Duncan;" the judge saying, that "he must hold that the defendant company, the real lender, knew this money was borrowed for the express purpose of paying the debts of the plaintiff's husband, these intermediaries being the agents of the defendant company." The appellants vigorously contest the correctness of this ruling, and insist, on the contrary, that the correct rule is, "That to have the effect of bringing knowledge home to the

principal, the notice must be to his agent, and not to any agent
or attorney employed by such agent." This is the controlling
issue in the case, and is not at all free from difficulty. It seems
that Duncan, of Barnwell, S. C., advertised that he had money
to loan on improved farms in Barnwell County; that the hus-
band of plaintiff applied, and obtained the promise of a loan of
$1,000, on the security of his wife's lands; the agreement went
forward to the Corbin Banking Company of New York, and in
due course a bond and mortgage, drawn payable to the defend-
ant company, was returned through the Corbin Company, and
after being executed by the plaintiff, was returned to the Corbin
Company. In the course of the negotiations for the loan, Bates,
the husband of plaintiff, informed Duncan that he needed the
money to pay his debts, and it was so applied.

Now, if the defendant company itself had negotiated the
loan, and had been informed by Mr. Bates that he was obtaining
the money to pay his own debts, the company, under our decided
cases, could not as lenders have recovered the bond and mort-
gage. And further, if Duncan had been the direct agent of the
company, and received the information referred to, it would
have been imputed to the company lending the money, and
they could not have recovered the bond and mortgage. "Notice
to the agent is notice to the principal. In the relation of the
principal to a third party, the undisputed rule exists, that no-
tice to the agent is notice to the principal, if the agent comes to
the knowledge of facts, while he is acting for the principal."
1 Am. & Eng. Enc. Law, 419 (agency); *Pritchett* v. *Sessions,* 10
Rich., 293. "A married woman has no power to borrow money
for the use of her husband, nor to give her note therefor, nor
bind her separate estate by a mortgage executed to secure such
note. Therefore, such note and mortgage can not be enforced
against the maker, when the lender knew that the money was
to be used in paying a judgment debt of the husband; and
knowledge by the lender's agent, through whom the loan was
negotiated, was knowledge by the lender himself." *Salinas* v.
*Turner,* 33 S. C., 231.

So far the matter is plain, but it is insisted that the doctrine
does not apply when another or sub-agent is introduced—that

notice to the agent, but not to the sub-agent, will be imputed to the principal.   There seems to be no case in our reports upon that precise point, but I confess that I am not able to perceive the principle on which the alleged distinction rests, if both the agent and sub-agent are, as here, engaged in the same business for the principal, although it may be on different parts of that business.   Such seems to be the general rule. "Where an agent has power to employ a sub-agent, the acts of the sub-agent, or notice given to him in the transaction of the business, have the same effect as if done or received by the principal." *Sooy* v. *State*, 41 N. J., 394; Story's Agency, §§ 452 and 454.  "An attorney employed by an agent for his principal is the principal's attorney." *Porter* v. *Peckham*, 44 Cal., 204.

There is, however, a line of cases which, at first view, would seem to modify the above rule, of which *Hoover, assignee,* v. *Wise et al.,* 91 U. S., 308, is generally regarded as the leading authority.   The case was decided by a divided court, Justices Miller, Clifford, and Bradley dissenting.   Upon considering carefully the dissenting opinion of Mr. Justice Miller, as well as the principal opinion, we think it will be found that even that case does not question the general rule, but labors to limit it by an exception, in reference especially to banks acting as collectors of money among themselves, &c.   We might not be willing to go so far in the direction of the exception as indicated in the opinion, but that case announces this doctrine : "The rule of law is undoubted, that for the acts of a sub-agent the principal is liable, but that for the acts of the agent of an intermediate independent employer, he is not liable.   It is difficult to lay down a precise rule which will define the distinctions arising in such cases.   The application of the rule is full of embarrassment.   Without attempting to harmonize or to classify the conflicting authorities, we think the case before us falls within a particular range of decisions," &c.   We do not think this case is analogous to that of *Hoover* v. *Wise,* or that the Corbin Banking Company, in its connection with this case, was an independent employer.  Athough the parties were widely separated, it was one transaction, in which the defendant company never relinquished their place as principal; the

Corbin Banking Company and W. H. Duncan meanwhile performing their respective parts in the business, under the general direction of the defendant company. This question does not appear to have been made and argued in the court below.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.