6522

GIBBES MACHINERY CO. v. ROPER.

1. PRINCIPAL AND AGENT.—Notice to an agent authorized to sell machinery—contract of sale having been ratified by principal—of sale of land of purchaser of machinery to a third party and mortgage thereon by the vendee is imputed to the principal in absence of limitation in authority of the agent of which the purchaser had notice.

2. PURCHASER FOR VALUE WITHOUT NOTICE.—A note payable to order of payee, indorsed in blank by him and passing into the hands of third persons for value before maturity, is presumed to be held by such party free from equities existing between the original parties. Although an intermediate indorsement expressing an agreement to extend time of payment rendered the note non-negotiable, the holder nevertheless succeeded to all the rights of the indorser.

3. REHEARING refused.

Before WATTS, J., Williamsburg, October, 1905. Modified.

Action by A. M. Gibbes, trading as Gibbes Machinery Co., against L. B. Roper, Pocahontas Roper, D. D. McCall. T. E. McCall, C. S. McCall and A. G. Sinclair, executors of C. S. McCall. From Circuit decree, defendants, Pocahontas Roper and executors of C. S. McCall, appeal. The facts are thus stated in the report of S. W. G. Shipp, special referee:

"The complaint alleges that W. H. Gibbes was at one time engaged in business, trading as W. H. Gibbes & Co.; that on May 17th, 1902, the said W. H. Gibbes sold and the plaintiff purchased for value the business conducted under

the name of W. H. Gibbes & Co., which business was there-
after and until the 9th day of May, 1904, conducted under
the business style of W. H. Gibbes & Co.; that subsequently
the style of the business was changed to Gibbes Machinery
Co.; that the defendant, L. B. Roper, purchased the real
estate described in the complaint on or about the 20th day of
May, 1896; that on the 27th day of June, 1901, the defend-
ant, L. B. Roper, became indebted to W. H. Gibbes, then
trading as W. H. Gibbes & Co., and continued to be indebted
to him until the sale of the business to plaintiff, and con-
tinued to be indebted to plaintiff to the time of the com-
mencement of this action; that suit was brought by plaintiff
on account of said indebtedness and judgment recovered
thereon; that execution was issued and a *nulla bona* return
made; that on or about the 21st day of September, 1903, a
deed from L. B. Roper to Pocahontas Roper conveying the
real estate described in the complaint, and dated the 16th
day of March, 1898, was placed on record, and about the
8th day of February, 1904, a mortgage of said property
from said Pocahontas Roper to C. S. McCall, bearing date
the 16th day of March, 1898, was placed on record; that the
defendants, L. B. Roper and Pocahontas Roper, executed a
mortgage to A. H. Williams, and that at the time when the
indebtedness of Roper to W. H. Gibbes was contracted and
when said indebtedness was assigned to the plaintiff, neither
the said W. H. Gibbes nor the plaintiff had any notice what-
ever of the existence of the deed and mortgage in question;
that no question is made as to the A. H. Williams mortgage,
and that plaintiff has no means of enforcing the collection
of his judgment.

"In due time, the defendant, L. B. Roper, answered the
complaint, denying knowledge as to the first three para-
graphs thereof; denying the *bona fides* of the transfer by
W. H. Gibbes to A. M. Gibbes; substantially admitting the
purchase of the real estate described in the complaint as
alleged; admitting the indebtedness to W. H. Gibbes, but
denying the transfer thereof to plaintiff; admitting that suit

was brought and the placing on record of the deed to Pocahontas Roper and the mortgage to C. S. McCall; denying on information, that execution was issued and *nulla bona* return made; denying the want of notice of the said deed and mortgage, and alleging actual notice thereof to the plaintiff, and admitting the mortgage to Williams and the inability of plaintiff to recover on his judgment.

"In due time, the defendants, C. S. McCall and Pocahontas Roper, answered jointly. In their answer, they denied on information, paragraphs one, two, three, five, six and seven of the complaint, and alleged specifically that the transfer from W. H. Gibbes to A. M. Gibbes was not *bona fide*, but was colorable. They admitted substantially the purchase of the property described in the complaint, and the execution of the mortgage to C. S. McCall, and also the appearance on the records of the deed and mortgage and the execution of the mortgage to Williams; they denied the want of notice of the Pocahontas Roper deed and the McCall mortgage, and also denied that plaintiff was unable to collect his judgment. They alleged affirmatively notice of the deed and mortgage in question, and that the alleged indebtedness was not *bona fide* and for valuable consideration.

"For a second defense they set up affirmatively the deed to Pocahontas Roper, the mortgage to C. S. McCall and actual notice of those papers to the plaintiff and his assignor before the debt in question was contracted. When the answer was served on behalf of Pocahontas Roper and C. S. McCall, a notice was served with it that a motion would be made upon the call of the docket for an order requiring the whole issue in the case to be tried by a jury. Within due time and at least five days before Court convened, after the issues were made up, the defendants, Pocahontas Roper and C. S. McCall, demurred to the complaint on the ground that there was no allegation that the transfer from W. H. Gibbes to A. M. Gibbes was for valuable consideration: that there was no allegation that the purchase by A. M. Gibbes

from W. H. Gibbes was for valuable consideration, and without notice.

"The case came up before his Honor, Judge C. G. Dantzler, on the motion to refer the whole issue to a jury and on the demurrer to the complaint, and Judge Dantzler made an order, dated October 20th, 1904, sustaining the demurrer on the first two grounds, granting leave to the plaintiff to amend, refusing to refer the issue to a jury and referring the case to the undersigned to hear and determine all issues of law and fact, and to report same to the Court with the testimony.

"Within due time the plaintiff amended his complaint in the particulars mentioned, and included as a defendant, J. E. Rushton. Thereafter the defendants, Pocahontas Roper and C. S. McCall, answered the amended complaint, the answer being identical, in all material particulars, to the answer to the original complaint. A reference was held on November 25th, 1904. At this reference one A. A. Strauss produced a notice or declaration of intention to come into the action and contribute to the expenses thereof and of enforcing his judgment therein. The defense objected to permitting Mr. Strauss to set up his claim in this manner, and insisted that he should file a petition setting up his rights. Thereafter said A. A. Strauss served on the attorneys for the defendant a petition alleging the purchase of the lands described in the complaint by L. B. Roper; the making of certain promissory notes during the months of February and March, 1901; the purchase from one Davis of said notes for value before maturity by said Strauss; the recovery of judgment thereon; the issuing of executions and *nulla bona* returns thereon; the appearance on record of the deed of L. B. Roper to Pocahontas Roper and the mortgage of Pocahontas Roper to C. S. McCall and the want of notice of said deed and mortgage at the time when the notes in question were transferred for value to said Strauss and the want of any means of enforcing the collection of said judgments.

"After the commencement of this action, but before the petition of A. A. Strauss was filed, C. S. McCall departed this life testate, and D. D. McCall, T. Edgar McCall, C. S. McCall and Alfred G. Sinclair were appointed executors of the will. An order of Court was taken substituting the executors for C. S. McCall and continuing the action against them. The petition of A. A. Strauss alleging the death of C. S. McCall, and that the executors above mentioned had qualified.

"In due time the defendants, Pocahontas Roper and the executors of the will of C. S. McCall, answered the petition of A. A. Strauss, admitting the judgments, but denying that they were of any effect so far as the rights of the defendants mentioned were concerned, and denying all other allegations of the petition except paragraphs seven, eight and eleven thereof. For a second defense, they set up the fact that the notes alleged by Strauss were given for the payment of premiums on certain life insurance policies, which said policies contained provisions nullifying themselves upon the non-payment of the notes, alleging that the notes were without consideration and that Strauss had notice of the want of consideration and of the deed and mortgage mentioned in the complaint; that the notes were transferred by Davis to O. T. Hall and B. M. Clement, trading as Hall & Clement, and that Hall & Clement had notice of the want of consideration and of the deed and mortgage in question; that Hall & Clement never endorsed or transferred the notes in question to Strauss, or to any other party, but that said notes were transferred as collateral security to an indebtedness to Hall & Clement, which has been paid.

"At the reference held on November 25th. 1904, and at another reference held on May 9th and 10th, 1905, the testimony was taken which is herewith reported.

"The case was argued before me on the pleadings and the testimony as taken.

"From the testimony I find as conclusions of fact that all

of the allegations of the complaint of Gibbes Machinery Co. are substantially sustained.

"The defense took the position as to the Gibbes complaint that the judgment of Gibbes against L. B. Roper conclusively established the validity of the debt, so far as L. B. Roper was concerned, but that as to Pocahontas Roper and C. S. McCall, the *bona fides* and consideration of this indebtedness could be inquired into in this suit, and that unless it appeared that the debt was contracted for valuable consideration and without notice of the deed from L. B. Roper to Pocahontas Roper and the mortgage of Pocahontas Roper to C. S. McCall, and also without any notice of the want of equity in the indebtedness, then defendants could not be bound by the judgment, and the property in question could not be subjected to the payment of the judgments. They also took the position that one J. A. Pate, the party who took the order for the machinery which constituted the basis of the indebtedness in question, was an agent of the plaintiff and that he had notice of the deed and mortgage in question and that notice to this agent constituted notice to his principal, the plaintiff in this action.

"I find from the testimony that L. B. Roper became indebted to W. H. Gibbes, as alleged in the complaint; that said indebtedness was transferred for value to A. M. Gibbes, and that neither W. H. Gibbes nor A. M. Gibbes ever had notice of the deed and mortgage in question until long after the indebtedness had been contracted and transferred to the plaintiff.

"I further find that both the indebtedness and the transfer were *bona fide* and for value. I find as a matter of fact that J. A. Pate had notice at the time when the indebtedness was contracted of the deed from L. B. Roper to Pocahontas Roper and of the mortgage from Pocahontas Roper to C. S. McCall, but I further find that, as a matter of fact, this notice was not communicated by Pate to his principal, the plaintiff in this action, nor was it within the scope of Pate's authority to bind his principal in such matters. In this

connection I ruled out the letter from J. A. Pate to W. H. Gibbes & Co., Exhibit 3, the letter from Gibbes, Exhibit 5, and I base my conclusions of fact as to the communication of this notice by Pate to Gibbes upon the testimony of A. M. Gibbes. If it were erron on my part to rule out Exhibits 3, 4 and 5, and if they should have been admitted, then they only strengthen the testimony of Gibbes on this point. I also find that the Gibbes debt was contracted subsequent to the execution of the deed and mortgage in question, and prior to their record.

"As to the Strauss petition, I find as conclusions of fact that the said Strauss owns the judgments which were set up in his petition; that the notes mentioned in the complaint were made as alleged; that they were transferred to Strauss for value and before maturity and without any notice of any defect or infirmity therein; that executions were issued pursuant to the said judgments and *nulla bona* returns made thereon; that neither Hall & Clement nor Strauss had any notice whatever of want of consideration in the notes in question when they purchased them for value, and that neither Hall & Clement nor A. A. Strauss had any notice of the deed from L. B. Roper to Pocahontas Roper, nor of the mortgage from Pocahontas Roper to C. S. McCall when they purchased the Roper notes, and that the notes in question were executed subsequent to the execution of the deed and mortgage in question, and prior to their record."

*Messrs. Newton & Owens,* for appellant, cite: *Rules governing plea of subsequent creditor without notice are same in both law and equity Courts:* 5 S. C., 102; 2 Pom. Eq. Jur., sec. 751; 59 S. C., 147; 36 S. C., 204; 26 S. C., 511. *What constitutes the plea:* 26 S. C., 510; 7 Cyc., 532, 818, 926; 28 S. C., 517; 45 S. C., 527; Eaton & Gilbert Com. Paper, sec. 71; 7 L. R. A., 595; 50 S. C., 241; 43 S. C., 287; 1 Dan. Neg. Inst., secs. 741, 748, 821, 822. *Notice to an agent in a transaction ratified by principal is binding on him:* Pom. Eq. Jur., secs. 666, 676; 1 Clarke and Skyles on Law

of Ag., secs. 146a, 476; 10 Rich., 293; 65 L. R. A., 209. *As to the rights of the present holder of the note:* 45 S. C., 527; Lindley on Part., 131; Eaton & Gilbert, secs. 71a, 73b; 58 Central Law Journal, 142; 72 Pac. R., 842; 17 S. C., 499. *What notice of defenses by original maker will defeat holder:* 7 Cyc., 940; 34 S. C., 569; Eaton & Gilbert on Com. Paper, sec. 75; 10 L. R. A., 676.

*Messrs. Wilcox & Wilcox,* contra, cite: *As to notice to principal through notice to agent:* 1 Clark & Skyles on Ag., 1039, 1042; 63 S. C., 559; 50 S. C., 292; 56 Am. St. R., 788; 71 S. C., 67; 35 Am. St. R., 788; 25 Am. St. R., 401, 763; 24 Am. St. R., 228; 40 S. C., 134; 33 S. C., 472. *Letters admissible to show information communicated by agent to principal:* 57 S. C., 16.

The opinion in this case was filed February 5, and remittitur held up on petition for rehearing until

April 23, 1907. The opinion of the Court was delivered by

Mr. Justice Gary. The appeal herein raises the question whether the plaintiffs are creditors for valuable consideration without notice under the recording statute.

The facts are fully set out in the report of S. W. G. Shipp, Esq., special referee, which was confirmed by his Honor, the Circuit Judge.

While these exceptions are numerous, the appellants have not discussed them in detail, as they are dependent upon the question whether the plaintiffs are creditors for value without notice.

The first assignment of error which will be considered is, whether the presiding Judge properly ruled that the plaintiff, A. M. Gibbes, was not bound by the notice communicated to his salesman, J. A. Pate, that L. B. Roper, had conveyed the land to Pocahontas Roper and that she had mortgaged the same to C. S. McCall, prior

to the following agreement entered into between said plaintiff (through his agent), and L. B. Roper:

"March 14, 1901.

"Mr. L. B. Roper, Single, S. C.: We propose to furnish you the following F. O. B. Charlotte, N. C., and Columbia, S. C., same to be complete as usually furnished, per manufacturer's catalogues and specifications, but no attachments, extra parts or other items are to be furnished unless mentioned specifically herein.

"First class materials are to be used and workmanship is to be the equal of that on any similar goods.

"Machines are waranted to do the work stated in manufacturers' catalogues, or indorsed hereon in writing by any authorized agent of this company, provided the necessary power is furnished, and belts, pulleys, etc., are of sufficient size, and the machines are properly set and operated. (When we furnish power, pulleys, belting, etc., we are responsible only when conditions and requirements are made known to us, and are explicitly stated.)

"Title to the above property remains in us until the same is fully paid for. Insurance to be taken for our benefit as our interest may appear, if required.

"Shipment to be made about June 15, 1901. Time is not guaranteed.

"Unless special instructions are given, shipments are made *via* the most advantageous routes.

"Payments to be made as follows: $370 69-100 dollars; one-third cash when machinery starts to work; one-half of balance January 1st, 1902; balance October 1st, 1902.

"Notes to bear interest at eight per cent. from September 1st, 1901, until paid.

"W. H. Gibbes & Co.,
"By J. A. Pate.

"The foregoing proposition is accepted this 14th day of March, 1901, subject to confirmation by W. H. Gibbes & Co., from their office in Columbia, S. C.     L. B. Roper."

Pate unquestionably had authority as agent to enter into the agreement for the sale of the machinery, subject to the approval of his principal, and, in this instance, the sale of the machinery was ratified by the principal.

The contract showed upon its face that a due regard for business methods, made it the duty of the agent to take into consideration the financial responsibility of the purchaser, in the absence of a limitation upon the authority of the agent, *of which the purchaser had notice.*

And it appears from the testimony, that the agent, in discharging said duty, considered the fact that the land had been conveyed to Mrs. Roper, and by her mortgaged to C. S. McCall, in determining whether the credit of L. B. Roper was thereby affected.

As the financial condition of L. B. Roper was an element necessarily entering into the sale of the machinery by the agent, in the first instance, unless the purchaser had been notified that the agent was not authorized to consider this question, the fact that Roper had conveyed the land, and that it had been mortgaged was material, and had a direct bearing upon the contract. Under such circumstances notice communicated to the agent will be imputed to the principal. *Salinas* v. *Turner,* 33 S. C., 231, 11 S. E., 702; *Bates* v. *Mortgage Co.,* 37 S. C., 88, 16 S. E., 883; *American Co.* v. *Felder,* 44 S. C., 478, 22 S. E., 598; *Blackwell* v. *Mortgage Co.,* 65 S. C., 105, 43 S. E., 395.

Therefore, there was error in the ruling that the plaintiff was a purchaser for value without notice.

The next question for consideration is whether there was error in the ruling that the plaintiff, Strauss, was a creditor for value without notice.

Even conceding that the notes which were payable to the order of Joe Cabell Davis, were subject to the defense of failure of consideration, nevertheless, they were indorsed in blank by Davis, and came into the hands of Hall and Clement before maturity, for valuable consideration, in due course of business.

Under these circumstances, the law will presume that they became the owners of the notes without notice of any equities that would defeat a recovery in an action thereon, between the original parties to the notes, and there was no testimony rebutting this presumption.

The plaintiff, Strauss, came into possession of the notes under the following special indorsement: "I hereby indorse the within obligation to ——, and I waive protest and notice of non-payment thereof, and agree to extension of time to debtor without further notice.            B. M. Clement."

While it is true the time of payment was rendered uncertain by the indorsement, and the notes were thereby rendered unnegotiable as long as that indorsement remained upon them, nevertheless Strauss succeeded to the rights of Hall & Clement, and as the notes in their hands were free from equities, the consideration could not be inquired into, after Strauss became the holder thereof.

It is the judgment of this Court that the judgment of the Circuit Court be modified in the particulars hereinbefore mentioned, and in all other respects affirmed.

MR. JUSTICE WOODS *concurs in the result.*

PER CURIAM.   April 23, 1907.   After careful consideration of the petition herein, the Court is satisfied that no material question of law or fact has either been overlooked or disregarded.

It is, therefore, ordered that the petition be dismissed and that the order heretofore granted staying the remittitur be revoked.