## WHALEY et al. v. AMERICAN FREEHOLD LAND–MORTG. CO. OF LONDON, Limited, et al.

(Circuit Court of Appeals, Fourth Circuit. May 5, 1896.)

No. 152.

1. USURY—COMMISSIONS TO AGENTS.
    When one negotiates a loan, through a third party, with a money lender, who in good faith lends the money at a legal rate, the contract is not usurious merely because the intermediary charges the borrower a heavy

commission; the intermediary having no legal or established connection with the lender, as agent. Fowler v. Trust Co., 12 Sup. Ct. 1, 141 U. S. 385; Grant v. Insurance Co., 7 Sup. Ct. 841, 121 U. S. 105; and Call v. Palmer, 6 Sup. Ct. 301, 116 U. S. 98,—followed.

2. SAME—UNAUTHORIZED EXACTION BY AGENT.
   When an agent authorized to lend money for his principal exacts, without the knowledge or authority of his principal, money from the borrower for his own benefit, this does not make the contract usurious. Call v. Palmer, 6 Sup. Ct. 301, 116 U. S. 98, followed.

3. SAME—LENDER'S KNOWLEDGE OF AGENT'S EXACTION.
   When a lender authorizes his agent to make loans for him under a general arrangement that he must look to the borrower for his compensation, and such agent accordingly charges the borrower a commission, the contract is usurious, whether the lender knew of the charge or not. Fowler v. Trust Co., 12 Sup. Ct. 1, 141 U. S. 385.

4. SAME—COMMISSIONS INCLUDED IN LOAN.
   A lawyer advertising money to loan, through whom is made a written application, giving full description of the property to be mortgaged, with abstract of title, and the banking company to whom he sends the papers, and which negotiates the loan with one of several mortgage companies, with which it is accustomed to deal, without preference, and without receiving commissions from them, will not be held agents of such mortgage company, so as to render the mortgage usurious, because 20 per cent. commissions were divided between the banking company and the lawyer, where the representatives of both companies in the transaction deny any relation of principal and agent, or that the mortgage company had any interest in, or knowledge of, the commissions. 63 Fed. 743, affirmed.

Appeal from the Circuit Court of the United States for the District of South Carolina.

This was a suit in equity by the American Freehold Land-Mortgage Company of London, Limited, and others against J. J. Whaley and P. W. Farrell, to foreclose a mortgage. There was a decree for complainants in the circuit court (63 Fed. 743), and the defendants appealed.

On the 25th October, 1883, W. H. Duncan, residing in Barnwell county, S. C., put in his county newspaper an advertisement of "money to lend in sums from $500 to $500,000, on five years' time." W. H. Duncan, now dead, who made this advertisement, was a man of small means. W. H. Duncan was a lawyer, but his son, W. J. Duncan, whom he associated in the business with him under this advertisement, was not. The business, as described by W. J. Duncan, the son, was that of negotiating loans for those who applied, and upon the securities they could give. The father attended to the law part of the business, and the son assisted him in negotiating the loans. They did a large business; negotiated loans to the amount of $250,000 or more in Barnwell county alone. All these loans were negotiated possibly with eight or ten companies, all having their places of business in New York City, but W. J. Duncan can remember only six. The business of the Duncans was conducted through the Corbin Banking Company, of New York, according to a routine described as follows by W. J. Duncan, the Corbin Company furnishing the printed forms: "The party made the application to us for the amount of money desired, giving a description of the property he proposed to mortgage, and also made a contract agreeing to pay us 20% commission; to pay for the abstract of title, and recording the mortgage, etc. We prepared the abstract of title, and with the application, contract, and inspector's report, and questions for applicant's agent to answer, we forwarded these to New York, to our correspondents, the Corbin Banking Company, who endeavored to negotiate with investors wherever they could find them. If they succeeded in negotiating the loan, the abstract, with the mortgage and notes, were returned to us for closing the loan, with a check from the Corbin Banking Company for the money. We did not know if we could get any money upon the

application, nor did we know who the lender would be. We only knew who the lender was when the money was sent to us for closing the loan." While W. H. Duncan was conducting this business, in December, 1886, or January, 1887, the defendant below, J. J. Whaley and himself met at a public meeting in which money matters were discussed, when Duncan informed Whaley that he was the agent of the Corbin Banking Company. Whether the subject of the loan to Whaley was first broached by Duncan or by Whaley, it was agreed that Duncan would get for Whaley the money he wanted. They entered into a contract as follows, which does not violate the usury laws of South Carolina:

"Whereas, I have this day employed W. H. Duncan to negotiate for me a loan of $5,000 for a term of five years, with interest at the rate of eight per cent. per annum, upon a note and mortgage securing the same, which shall be a first lien upon my farm in Barnwell county, S. C.: Now, then, if he shall succeed in negotiating said loan within thirty days, upon the usual conditions exacted by Eastern money lenders as to security, perfecting of title, insurance, &c., I agree to pay the said W. H. Duncan the sum of $1,000, which shall be in full of his commissions and the commissions of those whom he employs to assist him in making said negotiation. I also agree to furnish an abstract of title to the farm, and to pay the fee for recording my mortgage.

                                                      **"J. J. Whaley.**

   "Dated January 12, 1887."

In this certificate upon the application of Whaley, Duncan described the borrower as a man whose general reputation and standing in the community was "No. 1," who always paid his bills promptly for cash; never allowed himself to be sued; had a "splendid" supply of farming implements and machinery; was "strictly" temperate, industrious, economical, and honorable; who did not touch a drop of liquor; who only wanted the money to take up a prior mortgage and further improve his property proposed as security for the loan; who had other means of living,—a handsome income from a mill; and, finally, that the land offered to secure a $5,000 loan was worth $15,000 in cash. Altogether, Duncan's certificate described a first-class risk, in commercial language. Some time after the public meeting, Duncan mentioned to Whaley that he could get the money, and, three or four weeks later, informed him that he had the "papers fixed, all ready," and came out to Whaley's residence, where the papers were all signed. Among the papers signed by Whaley was the following note and contract:

"$5,000.                                  Blackville, S. C., Febry. 19th, 1887.

"On the 19th day of February, 1892, I promise to pay the American Freehold Land-Mortgage Co. of London, Limited, or order, at the office of the Corbin Banking Company, New York City, five thousand dollars in the gold coin of the United States, of the present standard of weight and fineness, with interest from this date at the rate of eight per cent. per annum, payably annually, as per 5 interest notes hereto attached, value received. Should any of said interest not be paid when due, it shall bear interest at the rate of ten per cent. per annum from maturity, and, upon failure to pay any of said interest within thirty days after due, said principal sum may, at the option of the holder of this note, be declared due, without notice, and may thereupon be collected at once, time being of the essence of this contract; and, in case this note is collected by suit, agree to pay all costs of collection, including ten per cent. of the principal and interest as attorneys fees. It is expressly agreed and declared that this note is made and executed under, and in all respects to be construed by, the laws of the state of South Carolina, and is secured by mortgage of even date herewith, duly recorded.                                **J. J. Whaley.**

   "No. 42,538."

Five coupon notes were attached, for the installments of interest which would accrue annually, all made payable at the Corbin Banking Company, in New York City. On the same day, Whaley executed the mortgage deed to secure the note, which was duly recorded on the 28th February, 1887, in the proper office of Barnwell county, S. C. In accordance with the premises

the American Freehold Land-Mortgage Company of London placed in the hands of the Corbin Banking Company the sum of $5,000, and took the note of Whaley above mentioned. On the same day, the 19th February, 1887, the defendant gave a receipt to the latter company, as follows:

"19 Feb., 1887.

"Received from the Corbin Banking Co. five thousand dollars, proceeds of loan negotiated by them for me with the American Freehold Land-Mortgage Company of London, Limited, less commissions, as agreed.

"J. J. Whaley."

The money received by the Corbin Banking Company from the Freehold Mortgage Company was not all paid over to Whaley, the borrower. Fifteen per cent. of it was retained as its own commission for negotiating the loan. Nor was the remaining $4,250 paid directly to the defendant Whaley. It was paid to W. H. Duncan, who applied it first in payment of his own commission of $250, due under the contract of January 12, 1887; leaving $4,000, which amount was applied for the benefit of Whaley, chiefly in discharge of one or more mortgage debts previously secured on Whaley's land, and to other debts of Whaley. A very inconsiderable sum, left after these larger liquidations, was paid to Whaley. W. G. Wheeler, a partner in the Corbin Banking Company, and the person who, on its behalf, negotiated for Whaley, through Duncan, for the loan sought by Whaley, testified, on material points, in substance, as follows: "When a loan is applied for, if it appears of a character that investors would regard it favorably, we call it to the attention of such person, firm, or corporation as would probably make the loan, and solicit the acceptance of it. We have no assurance beforehand that any particular person or firm will make the loan. We never know, until we attempt it, which of several parties to whom we go will accept it. There are half a dozen loan institutions to which we apply in such cases. The Corbin Banking Company received an application from Whaley, through Duncan, for a loan of $5,000. The application was signed by Whaley, and was accompanied by an agreement to pay a commission for services in negotiating the desired loan. We applied for this loan to J. K. O. Sherwood, the agent in New York of the American Freehold Land Company of London, whose business was the loaning of its funds upon improved real-estate security in this country. Sherwood was its agent for accepting or rejecting applications for such loans. The loan was made to Whaley by the American Freehold Land-Mortgage Company, and the Corbin Banking Company received from it, for Whaley, five thousand dollars,—no less, no more. He received from the defendant Whaley a receipt signed by him, to the Corbin Banking Company, for $5,000, negotiated by them for him with the American Freehold Land-Mortgage Company, less commissions as agreed. Neither the American Freehold Land-Mortgage Company nor the said Sherwood had any interest whatever in the commission paid by Whaley for negotiating the loan, and neither of them ever received any part of such commission. The American Freehold Land-Mortgage Company never paid the Corbin Banking Company anything for its services in this or any other loan; and the Corbin Banking Company never paid, or agreed to pay, to the American Freehold Land-Mortgage Company, all or any portion of the commissions received by the Corbin Company for services in respect to this or any other loan." James K. O. Sherwood, a dealer in real-estate securities, testified on material points in this case substantially as follows: "In January, 1887, the Corbin Banking Company, of New York City, came to me, as agent of the American Freehold Land-Mortgage Company of London, for accepting or rejecting loans on its account, and applied to me for a loan of $5,000 for five years, at 8 per cent. interest, in behalf of J. J. Whaley, of South Carolina. I examined the application and the abstract of title, which were the only papers submitted to me, and told the Corbin Banking Company that I would accept it for the American Freehold Land-Mortgage Company. The result of the negotiation was that the Corbin Banking Company afterwards notified me that they had the papers executed by J. J. Whaley for $5,000, upon his farm in Barnwell county, S. C. I approved the loan, for the mortgage company, and the Corbin Banking Company was paid $5,000 therefor; and

my company took the note and mortgage and abstract, dated as of the 19th February, 1887. It paid the full amount of the loan, $5,000,—no more and no less. Neither my company nor myself received anything, in the way of bonus, remuneration, or commission, for accepting this loan, or paying over the money loaned. I never sustained any relation to the Corbin Banking Company, nor did I ever have any interest in their business. The American Freehold Land-Mortgage Company did not have, and I never heard they had, any other agent than myself in making loans on real estate in America. I was informed and believe that the Corbin Banking Company was employed by J. J. Whaley in negotiating this loan. I know nothing whatever as to any relations between the Corbin Banking Company and J. J. Whaley, or any other person acting for them or him. The American Freehold Land-Mortgage Company did not employ, appoint, or select W. H. Duncan to negotiate loans in South Carolina. I do not know whether the Corbin Banking Company appointed said Duncan to negotiate loans in South Carolina for them, or whether he did negotiate loans for them. I do not know what commissions or charges, if any, the Corbin Banking Company charged or exacted from J. J. Whaley, in negotiating this loan from the American Freehold Land-Mortgage Company; nor has the Corbin Banking Company, or any of its members or agents, ever or at any time advised me, or the American Freehold Land-Mortgage Company, what commissions or charges were being made by the Corbin Banking Company to borrowers, in negotiating loans for them."

Edward McCrady, for appellants.

Allen J. Green, for appellees.

Before GOFF, Circuit Judge, and HUGHES and PAUL, District Judges.

HUGHES, District Judge (after stating the facts as above). The foregoing statement embraces the material facts on which the decision of this case must turn. The appellant, who was the defend-ant below, contends that, although the Corbin Banking Company and the Duncans were indeed his own agents in negotiating for him the loan which was ultimately granted by the American Freehold Land-Mortgage Company of London, yet, that these agents of his were also the agents of the mortgage company, in what is called the "placing" of this loan, and that the mortgage company was in such relations to the negotiation as to make the loan usurious. There are three established principles of law on this subject, which are as follows: (1) There can be no doubt that when one negotiates a loan through a third-party, with a money lender, and the latter, bona fide, lends the money at a legal rate of interest, the contract is not made usurious merely by the fact that the intermediary charges the borrower with a heavy commission; the intermediary having no legal or established connection with the lender, as agent. Fowler v. Trust Co., 141 U. S. 385, 12 Sup. Ct. 1; Grant v. Insurance Co., 121 U. S. 105, 7 Sup. Ct. 841; Call v. Palmer, 116 U. S. 98, 6 Sup. Ct. 301. (2) So, also, when an agent authorized to lend money for his principal exacts, without the knowledge or authority of such principal, money from the borrower for his own benefit, this does not make the contract usurious. Call v. Palmer, 116 U. S. 98, 6 Sup. Ct. 301. (3) But when a lender authorizes his agent to make loans for him under a general arrangement that he must look to the borrower for his compensation, and such agent for the lender effects a loan, and charges the borrower a commission, this will make the contract

usurious, whether the lender knew of the charge or not (Fowler v. Trust Co., 141 U. S. 385, 12 Sup. Ct. 1), for this exaction is by the authority of the lender, the principal.

The question in this case, therefore, is, were the Corbin Banking Company or Duncan (both or either) agents of the American Freehold Land-Mortgage Company of London, Limited, the mortgagee complainant in this case? This was the controlling fact in Bates v. Mortgage Co., 37 S. C. 90, 16 S. E. 883; in Brown v. Brown, 38 S. C. 173, 17 S. E. 452; in Sherwood v. Roundtree, 32 Fed. 122; and in Security Co. v. Gay, 33 Fed. 636. The two men who conducted and made the negotiation for the loan under consideration (Wheeler, as agent in New York for the Corbin Banking Company, and Sherwood, agent in New York for the American Freehold Land-Mortgage Company of London) both testify fully and positively that there was no previous contract, agreement, or understanding between the two companies, by which the mortgage company made loans to the banking company for the latter's customers. Wheeler testifies that his banking company applied for loans for its customers to various firms or companies, indiscriminately, and that none of them had any interest in any commissions which the banking company charged its customers, and that the American Freehold Land-Mortgage Company had no interest either in the commission of 15 per cent. charged by the banking company to Duncan, or in the commission of 5 per cent. charged by Duncan to the borrower, Whaley. He testifies that the mortgage company had no knowledge of those respective commissions, and that the agent had not such knowledge. Sherwood, the agent of the mortgage company, also testifies positively that neither his company nor himself had any knowledge of what commissions the banking company and Duncan, respectively, received for negotiating the loan which his company granted. Both of these agents testify that the whole sum of $5,000 was paid by the American Freehold Land-Mortgage Company to the banking company,—no more and no less,—and that the mortgage company had no interest in, or knowledge of, the commissions received by the banking company and by Duncan, respectively. The character of these respective agents and witnesses is not impeached by anything in the testimony. The defendant appellant, however, contends, in substance, that, in its very circumstances, this case shows that the Corbin Banking Company, who negotiated for, received, and paid over, less its commissions, the money respectively loaned and borrowed, was the agent both of the mortgage company, which lent, and the defendant, who received, the money, less commissions, borrowed, and that this is a necessary presumption from the nature of the transaction, in spite of the positive testimony to the contrary of the respective agents who conducted the transaction. We see nothing in the evidence, or in the character of the transaction, to justify this presumption. The learned circuit judge who conducted the trial of this case below held, in an opinion, in which he fully discusses this question, and in which we fully concur, that there was nothing in the evidence to justify this presumption. This fact, and other material evidence in this case, distinguish it from the case of Mortgage Co. v. Owens (decided by

this court at its last term) 18 C. C. A. 513, 72 Fed. 219.    The decision of the court below is therefore affirmed.

After the decision and order of the court below on the main question in controversy, there were subsequent proceedings in the court below, dealing with the details of the case consequent upon the decision in chief.    We see nothing in the action of the court below in these details to question, or to dissent from.    We accordingly affirm the action of the court below in all particulars.