UNION MORTGAGE BANKING & TRUST CO., Limited, v. HAGOOD et al. HAGOOD et al. v. UNION MORTGAGE BANKING & TRUST CO., Limited, et al. CORBIN v. SAME. UNION MORTGAGE BANKING & TRUST CO., Limited, v. CORBIN et al.

(Circuit Court, D. South Carolina. November 3, 1899.)

1. FEDERAL COURTS—STATE LAWS AS RULES OF DECISION—USURY.
Upon questions of usury the federal courts of equity are governed by the laws of the state applicable to the contract, as construed by the state courts.[1]

2. USURY—CONSTRUCTION OF CONTRACT—PROVISION FOR INTEREST AFTER MATURITY.
If, from the language of a note, it appears that the parties, when making it, understood that a provision for the payment of increased interest, after maturity, beyond the rate permitted by law, was not peremptory, but that the maker would be indulged provided he paid the increased rate of interest, such provision will render the note usurious; but if the provision was intended to enforce prompt payment, and the increased rate was a penalty for default, the note is not thereby rendered usurious.

3. SAME.
Under the decisions of the supreme court of South Carolina, a note containing in the body thereof the provision, "with interest thereon, after maturity, until paid, at the rate of ten per cent. per annum, payable annually; value received," is usurious, 10 per cent. being in excess of the lawful rate.

4. SAME—STATUTE OF SOUTH CAROLINA—CONSTRUCTION OF PROVISO.
Under the proviso in the South Carolina act of 1889 relating to usury (20 St. at Large, p. 377) that its provisions shall not apply "to contracts or agreements entered into or discounts or arrangements made prior to the first of March, 1890," a case is within the exception as to "arrangements made" where, prior to the date specified, the amount, terms, and security for a loan had all been agreed upon, and all that remained to be done after that date was to execute the papers and transfer the money.

5. SAME—EXCEPTION IN STATUTE—BURDEN OF PROOF.
The burden rests upon a complainant seeking to enforce a note to which a plea of usury based on such statute is interposed, where the note bears date after March 1, 1890, and is usurious on its face under the provisions of the statute, to bring the note within the exception by showing that the arrangement in pursuance of which the note was executed was in fact made prior to the 1st of March.

6. SAME—EFFECT OF COMMISSIONS PAID TO AGENT.
Where a loan on the security of real estate was negotiated by a bank and its local agent, who acted in behalf of the borrower, the notes and mortgage being executed to a third party, which furnished the money on the delivery to it of the notes and the executed and recorded mortgage, the notes, bearing a legal rate of interest, are not rendered usurious by reason of any commission paid by the borrower to the bank or its agent.

7. SAME—PROVISION FOR PAYMENT OF TAXES.
A provision, in a mortgage securing notes, requiring the mortgagor to pay the taxes on the mortgaged property, does not render the notes usuri-

[1] As to state laws as rules of decision, see note to Wilson v. Perrin, 11 C. C. A. 71, and, supplementary thereto, note to Hill v. Hite, 29 C. C. A. 553.

ous where the mortgagor is, by statute, the holder of the legal title, and liable for such taxes.

**8. SAME —PROVISION FOR ATTORNEYS' FEES.**

A provision in a mortgage for the payment of attorney's fees by the mortgagor in case of foreclosure does not render the notes secured thereby usurious.

**9. SAME—PENALTY—SOUTH CAROLINA STATUTE.**

The provision of the South Carolina act of 1882 (18 St. at Large, p. 36, § 2) that any person or corporation who shall receive as interest any greater amount than therein provided for shall forfeit double the sum so received, to be collected by separate action or by counterclaim, applies only to interest paid and received, and does not entitle a borrower to recover the penalty for usurious interest charged, but not paid.

This was a suit for the foreclosure of a mortgage, in which a cross bill was filed for the foreclosure of a second mortgage, and a cross bill by defendants, to recover penalties for usury taken, under the statute of South Carolina.

Allen J. Green, for complainants.

Wm. H. Townsend and Legare & Hollman, for defendants.

SIMONTON, Circuit Judge. This is a bill for foreclosure of a mortgage of realty in Barnwell county, S. C. The mortgage purports to secure the payment of four notes, each in the sum of $1,000, and payable on 1st days of December, 1891, 1892, 1893, 1894, respectively. The current annual interest on the notes is represented by coupons, each for $70. The notes each provide for the payment, after maturity, of interest at the rate of 10 per cent. per annum, payable annually until paid. The facts attending this transaction are these: The defendant Mrs. Sallie E. Hagood is the wife of William H. Hagood. W. J. Duncan, a resident of Barnwell, had advertised that he had, or could obtain, money to be lent on security. W. H. Hagood, acting on behalf of his wife, made application for a loan of $5,000. This application was made 1st February, 1890. Duncan found that he could not obtain a loan for $5,000, but that she could get $4,000. She consented to this, and on 15th February Duncan so informed the Corbin Banking Company, of New York, for which company, or with which company, he was acting. Thereupon the Corbin Banking Company sent to Duncan all the papers necessary for completing the transaction; that is to say, the notes, mortgage, and abstract of title. These came to Duncan about 20th March, 1890. He then informed Mrs. Hagood. The papers were executed by her on March 28, 1890. Duncan, upon their execution, paid her the money, less $200,—his commissions,—and recorded the mortgage. The money was paid by the cashing of his draft on Corbin & Co. through a bank in Barnwell, the documents being attached to the draft. Besides this mortgage, Mrs. Hagood executed to Willis J. Duncan a second mortgage of the same land, securing the payment of five notes for $120 each, representing a commission of 15 per cent. to Corbin & Co. for effecting the loan. In this commission W. J. Duncan had one-third interest. The defendant sets up in her answer the defense of usury, and she also filed a counterclaim for the penalties

provided in the act of the general assembly of South Carolina for usury.

The first question is, are these contracts, on their face, usurious? Usury is merely a statutory offense, and federal courts, in dealing with such a question, are governed by the laws of the state in which the transaction took place, and follow the construction put upon such laws by the state courts. Even in case of a resort to the court to be relieved of a usurious contract, the law of the state controls, and overrules the general rule that he who seeks equity must do equity. Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179. The statute in existence at the time of the transaction in question is found in 20 St. at Large S. C. 377. It is in these words:

"No greater rate of interest than seven (7) per centum per annum shall be charged, taken, agreed upon, or allowed upon any contract arising in this state for the hiring, lending or use of money or other commodity except upon written contracts wherein by express agreement a rate of interest not exceeding eight per cent may be charged. No person or corporation lending or advancing money or other commodity upon a greater rate of interest shall be allowed to recover in any court of this state any portion of the interest so unlawfully charged; and the principal sum, amount or value so lent or advanced, without any interest, shall be deemed and taken by the courts of this state to be the true legal debt or measure of damages to all intents and purposes whatsoever, to be recovered without costs: provided, that the provisions of this act shall not apply to contracts or agreements entered into, or discounts or arrangements made, prior to the first of March, 1890."

Previous to this statute the rate of interest in written contracts could be 10 per cent. 18 St. at Large S. C. p. 36. It is in these words:

"No greater rate of interest than seven (7) per centum per annum shall be charged, taken, agreed upon or allowed upon any contract arising in this state for the hiring, lending or use of money or other commodity except upon written contracts, wherein, by express agreement, a rate of interest not exceeding ten per cent may be charged. No person or corporation lending or advancing money or other commodity upon a greater rate of interest shall be allowed to recover in any court of this state any portion of the interest so unlawfully charged; and the principal sum, amount or value so lent or advanced, without any interest, shall be deemed and taken by the courts of this state to be the true legal debt or measure of damages to all intents and purposes whatsoever, to be recovered without costs."

Are the notes given by Mrs. Hagood, on their face, open to condemnation as usurious? It is contended that the provision for the payment of 10 per cent. per annum after maturity stamps them as usurious. In Brock v. Thompson, 1 Bailey, 327, plaintiff agreed to lend the defendant $3,000 in United States bank bills, upon his promise to pay it in a specified time with lawful interest, and that, if they were not paid in United States bank bills, he would pay the further sum of 5 per cent. as a premium. It was held that this additional 5 per cent. was not usury, but was a penalty intended to enforce the principal fulfillment of the contract. The case proceeded upon the idea that the payee of the note was in no way bound to grant indulgence, nor did the contract show that such indulgence was a part of the contract. And this seems to be the general rule. 3 Pars. Cont. 116; note to Davis v. Garr, 55 Am. Dec. 396. In Bank v. Strother, 28 S. C. 520, 6 S. E. 319, the words

of the note were: "And if not paid when due, bear interest from maturity at the rate of ten per cent. per annum as agreed for negotiating and carrying this loan so long as it remains unpaid." It was then contended that this provision was merely a penalty. But the court held otherwise, the words "as agreed for negotiating and carrying this loan so long as it remains unpaid" plainly show that the parties expected that the money would not be paid, and that the increased rate of interest was for forbearance as agreed. The principle seems to be this: If, from the contract, it appears that the parties, when making it, understood that the words of the note were not peremptory, but that the maker would be indulged provided he paid the increased rate of interest, this would be usury; but if the threat of increased interest was held out to enforce prompt payment, and if the increased rate was penalty for the default, it would not be usury. It is not an easy matter to construe this contract, applying the above principle to it. The words are, "with interest thereon, after maturity, until paid, at the rate of ten per cent. per annum, payable annually; value received." These words are in the body of the note. The consideration for this promise to pay interest is the same as that for the promise to pay the principal. The words "value received" come immediately after, and as a part of, the promise to pay interest. The language used in Bank v. Strother applies to this case. It will be observed that the promise to pay interest after maturity at an unlawful rate was incorporated in, and formed part of, the original contract. It was one of the terms of that agreement, and, if there was a valid consideration for such agreement, as it is conceded there was such consideration, being expressly stated in the note, it was clearly sufficient to support all of the terms of the agreement, including that by which the maker promised to pay an illegal rate of interest after the time fixed for the payment of the principal sum. It will be noticed that the notes provide for the payment of interest, after maturity, until paid, 10 per cent. per annum, payable annually. These last words, "payable annually," express a contract on the part of the promisor, and the acceptance of it on the part of the promisee. Indeed, they are the words used in an investment of money. They are covered by the reasoning in O'Neall v. Bookman, 9 Rich. Law, 80. It appears to the court that the note, on its face, without more, would be usury.

The next question is, do the facts of this case bring these notes within the exception of the statute? The words are: "The provision of this act shall not apply to contracts or agreements entered into or discounts or arrangements made prior to the first of March, 1890." The words of the statute are, "contracts or agreements entered into or discounts or arrangements made." We must give effect to all the words of the statute. This being so, the words "contracts or agreements entered into" must mean contracts or agreements completed; and the word "arrangements" must mean a transaction, all of the terms of which are fully understood, but not yet consummated. The negotiations began 1st February, 1890. Mrs. Hagood first desired a loan of $5,000. This was declined, and

an intimation was given that $4,000 could be had. After consideration, she became content with $4,000. This was on 15th February, 1890. There was delay in sending on the papers, but finally the Corbin Banking Company sent the documents about 20th March, and the transaction was consummated on 25th. The Century Dictionary defines "arrangement" thus: "Preparatory measure or negotiation; previous disposition or plan; preparation; commonly used in the plural, as, 'We have made arrangements for a journey.'" Webster defines "arrangement" to mean "preparatory measure; preparations; as, 'We have made arrangements for receiving company.'" In this case the parties were preparing for a loan. All the terms were distinctly stated in the proposal of Mrs. Hagood. At first they differed as to the amount, and as to the amount only. Mrs. Hagood wanted $5,000. The Corbin Banking Company offered $4,000. On 15th February, 1890, this was accepted; that is to say, this arrangement preparatory to the execution of the papers was made and concluded then. What followed was simply the consummation of the arrangement. This brings the case within the exception of the statute. This would be conclusive if Duncan or the Corbin Banking Company were the lenders. But the whole case of complainant goes upon the idea that the Corbin Banking Company and Duncan were intermediaries, acting for Mrs. Hagood, and placing the loan for her with complainant. The evidence shows that, as between her and the Corbin Banking Company, there was a definite arrangement prior to 1st March, 1890. There is no evidence whatever showing when the arrangement with the complainant was made. If this was not made prior to 1st March, 1890, it comes within the prohibition of the statute. Now, on 15th February, 1890, Mrs. Hagood consented to the loan of $4,000, and authorized it to be made. Nothing more seems to have been done until 20th March, 1890, when the documents were sent on to her for her signature. The reasonable and probable conclusion is that between 15th February and 20th March the Corbin Banking Company were trying to place the loan, and that they did place it with complainant. And, as no doubt the Corbin Banking Company are business people, the reasonable and probable conclusion is that they could not place the loan until a short time before they sent the documents on; that is to say, between 1st and 20th March, 1890. There is a painful want of evidence on this point. But it is the duty of a plaintiff to prove his case. The defect of testimony must tell against him. The complainant was bound to show that it came within the exception of the statute, and to prove that its arrangement was made prior to 1st March, 1890. It has not done so, and it is not unreasonable to infer that it could not do so. The result is that the notes and mortgages are usurious.

The next question is, is there in the circumstances of this transaction evidence of usury in the contract? It appears from the evidence in this case that W. H. Duncan advertised money to lend; that the defendant, through her husband, as agent, approached him with the purpose of obtaining a loan of $5,000; that for this pur-

pose she signed the application, in which she recognizes Duncan as her agent; that Duncan examined the title of the property, and made an abstract of title; that he sent this abstract, with a description of the property, to the Corbin Banking Company, of New York, with whom he had a business connection; that he was informed by the Corbin Banking Company that a loan for $5,000 could not be effected, but that $4,000 could be obtained upon the security offered; that the defendant then reduced her proposition to $4,000, whereupon the documents were returned to Duncan for execution; that the defendant then executed the notes and the mortgage, and Duncan had the latter recorded; that, with these attached to his draft, Duncan procured the money from a bank in Barnwell, and paid it over to the defendant, she paying him $200 for his services in preparing the abstract and the other papers. The notes were made payable to the complainant, and the mortgage was executed to it. Duncan did not know, and had no relation whatever with, the complainant. In order to affect the lender with the usurious features of a contract growing out of the compensation paid for making it, it must appear either that the lender effected the loan directly or through an agent who came to an understanding at the outset with the lender that he must make the borrower pay for his services. Fowler v. Trust Co., 141 U. S., at page 401, 12 Sup. Ct. 1. If, however, the borrower employs a broker to effect the loan, agreeing to pay him commissions, and if that broker has no regular or established connection with the lender in respect to his compensation, then the lender is not affected by any agreement made between the borrower and the broker, when he does not lend his money at a greater rate of interest than the statute permits. Id.; Grant v. Insurance Co., 121 U. S. 106, 7 Sup. Ct. 841; Whaley v. Mortgage Co., 20 C. C. A. 306, 74 Fed. 73, and 42 U. S. App. 90. There is no direct evidence whatever connecting Duncan with the complainant. On the contrary, he declares that no connection whatever existed between him and it. The only proof of any relation between the complainant and the Corbin Banking Company is that the debt and the interest coupons were payable at the office of this banking company. But this inference is not conclusive. The business in which the Corbin Banking Company is engaged—that of banking—is the collection of notes and of debts. It would be very natural for the complainant to put the collection of these choses in the hands of the Corbin Banking Company, who had placed the debt with it. The whole testimony seems to show that Duncan, with the banking company, acted as agents of the defendant in placing the loan; that they put the proposition of the defendant in a business shape, and then offered the loan to the complainant. No doubt the 7 per cent. interest was a great inducement to the acceptance of the loan. The legal rate in New York is 6 per cent., but the ordinary rates upon which money is lent are much less than this. The learned counsel for the defendant lay stress upon the fact that Duncan, after the execution of the papers, received them, and had the mortgage recorded; and that in this regard he must have acted for the complainant. But

before the papers could be negotiated and accepted, and the money on them obtained, it was necessary to record them; and at that time he had received no money from complainant. In fact, Duncan himself got the money from the bank on his own draft, and he retained control and possession of the papers for his protection in this behalf by attaching them to the draft. The draft was not drawn on complainant, but on the Corbin Banking Company, and it is most probable that the complainant paid out no money until it received the papers.

It is said, however, that the provision that the borrower shall pay the taxes upon the property makes the contract usurious. This is not true. The mortgagor is liable for the tax under the law. Rev. St. S. C. § 218. "Every person shall be liable to pay taxes and assessments on the real estate of which he may stand seised in fee or for life," etc. And in section 1893 it is provided that the mortgagor remains the legal owner of realty even after condition broken. So far is this recognized in the state of South Carolina that it is a very common covenant in a mortgage that, if the mortgagor fail to pay the taxes on the mortgaged property, the mortgagee may do so, and hold the mortgage as security for his repayment.

Nor is the provision for the payment of attorney's fees in case of suit on the mortgage usurious. Mortgage Co. v. Whaley (C. C.) 63 Fed. 743.

It having been determined that the notes held by complainant are usurious, the question arises, what is the penalty? The act of 1882 (18 St. at Large S. C. 36) declares the penalty in its second section:

"Any person or corporation who shall receive as interest any greater amount than is herein provided for shall in addition to the forfeiture herein provided for, forfeit also double the sum so received, to be collected by a separate action or allowed as a counterclaim to any action brought to recover the principal sum."

The first section of the act is quoted supra; and also the act of 1889, amending it, quoted in full supra, allowed the recovery of the principal, only, in an action brought upon the contract. The penalty above set out is for the "receiving as interest a greater amount than is herein provided for." Now, receiving usurious interest is one thing and charging usurious interest another. "They are two entirely distinct things." Hardin v. Trimmier, 27 S. C. 114, 3 S. E. 46. And the penalty is the forfeiture, not of the interest charged, but of the amount received greater than the amount allowed by law. The precise question was decided in Hardin v. Trimmier, 30 S. C. 398, 9 S. E. 342. In that case the defendant was allowed as counterclaim only that excess of interest received over 7 per cent. See Utley v. Cavender, 31 S. C. 289, 9 S. E. 957.

In the present case it appears that several of the interest coupons were paid by the defendant. If, in making such payments, she paid more than 7 per cent., she is entitled to set up by way of counterclaim the excess paid over 7 per cent. Upon the notes unpaid the complainant can recover the principal sum only.

With regard to the notes and mortgage given for commissions, it is clear that that was an agreement, contract, or at least an arrangement made before the 1st March, 1890.

The complainants in the second mortgage can recover the amount without penalty. If counsel cannot agree, let the case be referred to J. E. Hagood, Esq., as special master, to inquire and report what sums have been paid to complainant as interest in excess of 7 per cent., and also to inquire and report what notes for the loan yet remain unpaid. Let him also inquire and report what amount is due and unpaid upon the notes secured by the second mortgage.